UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEN SEVENTY ONE HOME CORP. and MORTON G.  :   **Docket No.: 07 CV 11211**
YUTER,                                                                    **(DLC)**

                                                          :

                    Plaintiffs,

                                                          :

        -against-                                                    **NOTICE OF MOTION**

                                                          :

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
JOSH NEUSTEIN, LEONARD W. HUTCHINGS, and   :
JUDY HUTCHINGS,

                                                          :

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIBERTY MUTUAL FIRE INSURANCE COMPANY,   :

                    Third-Party Plaintiff,        :

        -against-                                          :

GREENWICH INSURANCE COMPANY,           :

                    Third-Party Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLEASE TAKE NOTICE,** that upon the annexed Declaration of Glenn J. Fuerth, dated March 17, 2008, the accompanying exhibits and Memorandum of Law, and upon all the pleadings and proceedings heretofore had herein, the Third-Party Defendant, Greenwich Insurance Company, by its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, will move this Court before the Honorable Denise L. Cote at the United States District Court, Southern District of New York, located at 500 Pearl Street, New York, New York, 10007, on a date and time to be set by the Court so that counsel may be heard for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Third-Party Plaintiff, Liberty Mutual Fire Insurance Company's, Third-Party Complaint on the ground that the Third-Party Complaint fails to state a claim for which relief can be granted, and for such other and further relief as this Court deems just and proper.

3144542.1

**PLEASE TAKE FURTHER NOTICE**, that pursuant to Local Rule 6.1, opposing affidavit and answering memoranda, if any, shall be served within ten business days after service of these moving papers and reply affidavits and reply memoranda, if any, shall be served within five business days after service of the answering papers.

Dated: New York, New York
         March 17, 2008

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____

GLENN J. FUERTH (GJF 5848)
Attorneys for Third-Party Defendant
GREENWICH INSURANCE
COMPANY
150 East 42nd Street
New York, New York 10017
(212)490-3000
(212) 490-3038 (f)
File No.: 10097.00119

To:    Marshall T. Potashner, Esq.
       Jaffe & Asher LLP
       Attorneys for Defendant/Third-Party Plaintiff
       Liberty Mutual Fire Insurance Company
       600 Third Avenue, 9th Floor
       New York, New York 10016
       (212) 687-3000

       C. William Yanuck, Esq.
       Pillinger Miller Tarallo, LLP
       Attorneys for Plaintiffs
       Ten Seventy One Home Corp. and Morton Yuter
       570 Taxter Road, Suite 275
       Elmsford, New York 10523
       (914) 703-6300
       (914) 703-6688 (f)

3144542 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| TEN SEVENTY ONE HOME CORP. and MORTON G. : YUTER, | **Docket No.: 07 CV 11211** **(DLC)** |
| | : |
| Plaintiffs, | |
| | : **DECLARATION OF GLENN** |
| -against- | **J. FUERTH IN SUPPORT OF** |
| | : **THIRD-PARTY** |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | **DEFENDANT, GREENWICH** |
| JOSH NEUSTEIN, LEONARD W. HUTCHINGS, and | : **INSURANCE COMPANY'S** |
| JUDY HUTCHINGS, | **MOTION TO DISMISS** |
| | : **PURSUANT TO RULE** |
| Defendants. | **12(b)(6)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIBERTY MUTUAL FIRE INSURANCE COMPANY,    :

         Third-Party Plaintiff,    :

         -against-    :

GREENWICH INSURANCE COMPANY,    :

         Third-Party Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

     GLENN J. FUERTH, an attorney duly admitted to practice before the Bar of this Court, aware of the penalties of perjury, pursuant to 28 U.S.C. § 1746, states as follows:

     1.    I am a member of the firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys for the Third-Party Defendant, Greenwich Insurance Company ("Greenwich"), and as such, I am fully familiar with all of the prior pleadings and proceedings heretofore had herein that pertain to the instant action.

     2.    I submit this Declaration, along with the exhibits set forth herein and the annexed Memorandum of Law, in support in support of Greenwich's motion for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Third-Party Plaintiff, Liberty Mutual Fire Insurance Company's, Third-Party Complaint on the ground that the Third-Party

Complaint fails to state a claim for which relief can be granted, and for such other and further relief as this Court deems just and proper.

    3.    Attached as Exhibit "A" is a true and correct copy of the underlying Plaintiff's Summons and Verified Complaint, dated May 19, 2005, for the action entitled *Leonard W. Hutchings and Judy Hutchings v. Morton G. Yuter, Josh Neustein, and Ten Seventy One Home Corp.*, bearing index number of 16037/05, venued in New York Supreme Court, Bronx County.

    4.    Attached as Exhibit "B" is a true and correct copy of Plaintiff's Summons and Verified Complaint, dated October 17, 2007, for the action entitled *Ten Seventy One Home Corp and Morton G. Yuter v. Liberty Mutual Fire Insurance Company, Josh Neustein, Leonard W. Hutchings, and Judy Hutchings*, bearing civil action number of 07 Civ. 11211, venued in United States District Court, Southern District of New York.

    5.    Attached as Exhibit "C" is a true and correct copy of the Third-Party Plaintiff, Liberty Mutual Fire Insurance Company's, Third-Party Complaint, dated January 7, 2008.

    6.    Attached as Exhibit "D" is a true and correct copy of the commercial general liability insurance policy, numbered WGG 5001567, issued by Greenwich.

    7.    Attached as Exhibit "E" is a true and correct copy of the commercial general liability insurance policy, numbered WGG 5001564, issued by Greenwich.

Dated: New York, New York
      March 17, 2008

GLENN J. FUERTH

3148265 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEN SEVENTY ONE HOME CORP. and MORTON G.    :    **Docket No.: 07 CV 11211**
YUTER,                                                    **(DLC)**

                                                           :

                Plaintiffs,

                                                           :

          -against-

                                                           :

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
JOSH NEUSTEIN, LEONARD W. HUTCHINGS, and    :
JUDY HUTCHINGS,

                                                           :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIBERTY MUTUAL FIRE INSURANCE COMPANY,    :

                Third-Party Plaintiff,    :

          -against-    :

GREENWICH INSURANCE COMPANY,    :

                Third-Party Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT GREENWICH INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Third-Party Defendant
GREENWICH INSURANCE COMPANY
150 East 42nd Street
New York, New York 10017
(212)490-3000
(212) 490-3038 (f)
File No.: 10097.00119

Of Counsel:   Glenn J. Fuerth
              Ray Hughes

3144718.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................i

PRELIMINARY STATEMENT........................................................................................1

PROCEDURAL HISTORY...............................................................................................2

      The Underlying Action...........................................................................................2

      The Declaratory Judgment Action..........................................................................2

      The Third-Party Action..........................................................................................3

FACTUAL BACKGROUND.............................................................................................4

      Policy WGG 5001567............................................................................................4

      Policy WGG 5001564............................................................................................5

ARGUMENT.....................................................................................................................8

      POINT I..................................................................................................................8

      POINT II.................................................................................................................9

CONCLUSION................................................................................................................14

3144718.1

# TABLE OF AUTHORITIES

### Cases

*King v. Simpson*, 189 F.3d 284, 286 (2d Cir. 1999)................................................1

*Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999)..........................................1

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)..............................1

*Switzer v. Merchants Mut. Cas. Co.*, 2 N.Y.2d 575, 141 N.E.2d 904 (1957)
(quoting *Kuhn v. Auto Cab Mut. Ind. Co.*, 244 App. Div. 272, 270 N.Y. 587)........................8

*Pa. Gen. Ins. Co. v. Kielon*, 112 A.D.2d 709, 492 N.Y.S.2d 502 (4th Dep't 1985)
(quoting *Novak v. All City Ins. Co.*, 43 NY2d 854)..........................................8

*Davis v. Block & Smith, Inc.*, 297 N.Y. 20, 74 N.E.2d 220 (1947)...........................9 and 10

*New York Convention Ctr. Operating Corp. v. Morris Cerullo World
Evangelism, Inc.*, 269 A.D.2d 275, 704 N.Y.S.2d 211 (1st Dept. 2000)..........9, 10 and 12

*ZKZ Assoc. LP v. CNA Ins. Co.*, 224 A.D.2d 174, 637 N.Y.S.2d 117
(1st Dep't 1996)..................................................9, 10, 11 and 12

*Royal Globe Ins. Co. v. Dinan*, 42 Misc. 2d 595, 248 N.Y.S.2d 469
(N.Y. Sup. Ct. 1964)..................................................9, 11 and 12

*De Forte v. Allstate Ins. Co.*, 81 A.D.2d 465, 442 N.Y.S.2d 307 (4th Dep't 1981).................13

### Federal Rules of Civil Procedure

Rule 12(b)(6)..................................................*passim*

3144718.1

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted, in addition to the Declaration of Glenn J. Fuerth, dated March 17, 2008,[1] in support of Third-Party Defendant, Greenwich Insurance Company's ("Greenwich") pre-answer motion to dismiss the Third-Party Complaint of the Third-Party Plaintiff, Liberty Mutual Fire Insurance Company ("Third-Party Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her or his complaint which would entitle her or him to relief. See *King v. Simpson*, 189 F.3d 284, 286 (2d Cir. 1999). The court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. See *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

The case at bar involves an alleged breach of a written contract for insurance, the terms of which are clear and precise, and the content and validity of which are undisputed. Moreover, the written contracts at issue do not support the allegations made by Third-Party Plaintiff's against Greenwich. It is therefore within the Court's power to make a determination on this matter at this time, and dismiss the Third-Party Complaint as it fails to state a claim for which relief can be granted.

---

[1] All references to the Declaration of Glenn J. Fuerth, dated March 17, 2008, will be made as "(Fuerth Dec. at ¶ __)."

## PROCEDURAL HISTORY

### The Underlying Action

On or about May 25, 2005, an underlying action was commenced, entitled *Leonard W. Hutchings and Judy Hutchings v. Morton G. Yuter, Josh Neustein, and Ten Seventy One Home Corp.*, bearing index number of 16037/05, venued in New York Supreme Court, Bronx County (the "underlying action").[2] The underlying action seeks damages for personal injuries allegedly sustained by Leonard W. Hutchings at 3001 Arlington Avenue, Bronx, New York ("3001 Arlington"). (Underlying Complaint ¶ 27). Upon information and belief, Mr. Hutchings was an employee of the New York City Department of Buildings, as was performing an inspection of 3001 Arlington as part of his employment when the incident occurred.

### The Declaratory Judgment Action

A declaratory judgment action was commenced, which is entitled *Ten Seventy One Home Corp and Morton G. Yuter v. Liberty Mutual Fire Insurance Company, Josh Neustein, Leonard W. Hutchings, and Judy Hutchings*, bearing action number of 07 Civ. 11211, venued in United States District Court, Southern District of New York (the "declaratory judgment action").[3] In the declaratory judgment action, Plaintiffs, Ten Seventy One Home Corp and Morton G. Yuter seek insurance coverage from Third-Party Plaintiff for defense and indemnification in the underlying action. (Declaratory Judgment Complaint ¶¶ 21, 26 and 32).

---

[2] A copy of the underlying Plaintiff's Summons and Verified Complaint, dated May 19, 2005, for the action entitled *Leonard W. Hutchings and Judy Hutchings v. Morton G. Yuter, Josh Neustein, and Ten Seventy One Home Corp.*, bearing index number of 16037/05, venued in New York Supreme Court, Bronx County, is annexed to the Declaration of Glenn J. Fuerth, dated March 17, 2008, as Exhibit "A," all references to which will be made as "(Underlying Complaint ¶ __)."

[3] A copy of Plaintiff's Summons and Verified Complaint, dated October 17, 2007, for the action entitled *Ten Seventy One Home Corp and Morton G. Yuter v. Liberty Mutual Fire Insurance Company, Josh Neustein, Leonard W. Hutchings, and Judy Hutchings*, bearing civil action number of 07 Civ. 11211, venued in United States District Court, Southern District of New York, is annexed to the Declaration of Glenn J. Fuerth, dated March 17, 2008, as Exhibit "B," all references to which will be made as "(Declaratory Judgment Complaint ¶ __)."

## The Third-Party Action

Third-Party Plaintiff commenced the third-party action (the "third-party action") against Greenwich.[4] The complaint in the third-party action alleges that Greenwich issued policy WGG 5001567 to Ten Seventy One Home Corp. and Josh Neustein with a policy period of February 12, 2002 to February 12, 2003. (Third-Party Complaint ¶ 8). Furthermore, the third-party action alleges that Greenwich has failed and refused to provide defense and indemnification to Ten Seventy One Home Corp. and Morton G. Yuter for the underlying action. (Third-Party Complaint ¶ 12). It further alleges that Third-Party Plaintiff issued a LibertyGuard Deluxe Homeowners Policy, number H32-221-376600-001 (the "Liberty policy"), to Josh Neustein. (Third-Party Complaint ¶ 14). In the third-party action, Third-Party Plaintiff seeks a declaration that Ten Seventy One Home Corp., Morton G. Yuter and Josh Neustein are insureds under policy WGG 5001567. (Third-Party Complaint ¶¶ 20 and 21). Further, Third-Party Plaintiff seeks a declaration that the policy issued by Greenwich is primary to the Liberty policy. (Third-Party Complaint ¶ 23). Third-Party Plaintiff also seeks reimbursement for expenses incurred in defense of the underlying action. (Third-Party Complaint ¶ 28).

---

[4] A copy of Third-Party Plaintiff, Liberty Mutual Fire Insurance Company's, Third-Party Complaint, dated January 7, 2008, is annexed to the Declaration of Glenn J. Fuerth, dated March 17, 2008, as exhibit "C," all references to which will be made as "(Third-Party Complaint ¶ ___)."

## FACTUAL BACKGROUND

### Policy WGG 5001567

As alleged in the Third-Party Complaint, Greenwich issued a commercial general liability insurance policy numbered WGG 5001567, with effective dates of February 15, 2002 to February 15, 2003 ("policy WGG 5001567").[5]  On policy WGG 5001567, the named insured is listed as "Ten Seventy One Home Corp. & Josh Neustein" and the mailing address is listed as "3001 Arlington Ave., Bronx, NY 10463."  Furthermore, policy WGG 5001567 states on an endorsement, as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Premises:** | Per supplementary declarations page form GLSD (6/99) |
| **Project:** | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the Schedule.

---

[5] A copy of Greenwich policy WGG 5001567 is annexed to the Declaration of Glenn J. Fuerth, dated March 17, 2008, as Exhibit "D."

- 4 -

Moreover, form GL SD (6/99) of policy WGG 5001567 provides as follows:

**Commercial General Liability**
**Supplemental Declarations Page**

Policy No:    WGG 500167

Location of all premises you own, rent or occupy:

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 1    74-78 Post Ave. | Apartments | 60022 | 69 units | |
|      New York, NY 10034 | Bldg or Premises | 61217 | 1,000 sq. ft. | |

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 2    682 Academy Street | Apartments | 60022 | 31 units | |
|      New York, NY 10034 | | | | |

GL SD (6/99)                                                                  *Page 1 of 1*

## Policy WGG 5001564

Greenwich also issued a commercial general liability insurance policy numbered WGG 5001564, with effective dates of February 15, 2002 to February 15, 2003 ("policy WGG 5001564" or collectively the "policies").[6]  On policy WGG 5001564, the named insured is listed as "2486, LLC" and the mailing address is listed as "c/o 1071 Home Corp., 3001 Arlington

---

[6] A copy of Greenwich policy WGG 5001564 is annexed to the Declaration of Glenn J. Fuerth, dated March 17, 2008, as Exhibit "E."

- 5 -

3144718.1

Ave., Bronx, NY 10463." Furthermore, policy WGG 5001564 states on an endorsement, as

follows:

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
### LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| | |
|---|---|
| **Premises:** | Per supplementary declarations page form GLSD (6/99) |
| **Project:** | |

(If no entry appears above, information required to complete this endorsement
will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and
advertising injury" and medical expenses arising out of:

   1.   The ownership, maintenance or use of the premises shown in the
        Schedule and operations necessary or incidental to those premises;
        or

   2.   The project shown in the Schedule.

Furthermore, form GL SD (6/99) of policy WGG 5001564 provides as follows:

### Commercial General Liability
### Supplemental Declarations Page

**Policy No:    WGG 500164**

Location of all premises you own, rent or occupy:

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 1    2821 Briggs Ave.<br>Bronx, NY 10458 | Apartments | 60022 | 32 units | |

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 2    502 West 213th Street | Apartments | 60022 | 26 units | |

- 6 -

New York, NY 10034

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 3    620 West 182nd St. New York, NY 10033 | Apartments | 60022 | 16 units | |

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 4    2486 Morris Ave. Bronx, NY 10458 | Apartments | 60022 | 22 units | |

3144718.1

## ARGUMENT

### POINT I

#### Greenwich Does Not Afford Coverage for 301 Arlington as an Endorsement Excludes Premises Not Listed in the Policies

The rights and obligations of the parties are solely contractual arising out of the policies issued. See *Switzer v. Merchants Mut. Cas. Co.*, 2 N.Y.2d 575, 141 N.E.2d 904 (1957) (quoting *Kuhn v. Auto Cab Mut. Ind. Co.*, 244 App. Div. 272, 270 N.Y. 587). Therefore, Greenwich requests that this Court dismiss the Third-Party Complaint as the breach of contract alleged is clearly erroneous based on the language contained in the policies.

As indicated in the endorsements referenced above, the policies only apply to occurrences arising out of, "The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises." Furthermore, the Schedules state, "Per supplementary declarations page form GLSD (6/99)," which in turn state, "Location of all premises you own, rent or occupy." However, the location of the incident alleged in the underlying action, 3001 Arlington, is not listed on those forms. Thus, 3001 Arlington is not a covered premises.

It is well settled that where an exclusionary clause is found to be unambiguous, it must be given its plain and ordinary meaning. See *Pa. Gen. Ins. Co. v. Kielon*, 112 A.D.2d 709, 492 N.Y.S.2d 502 (4th Dep't 1985) (quoting *Novak v. All City Ins. Co.*, 43 NY2d 854). Here, the exclusionary language contained in the endorsements for Limitation of Coverage to Designated Premises or Project is unambiguous. They state that the policies only apply to the listed premises. Furthermore, the Supplemental Declarations Pages clearly do not contain or reference 3001 Arlington as a premises owned, rented or occupied by the insureds. The policies must therefore be given their plain and ordinary meaning, and coverage should not apply for the claim

- 8 -

arising from 3001 Arlington, as it is not included in the endorsement. Accordingly, the Third-Party Complaint must be dismissed as a matter of law.

## POINT II

### 3001 Arlington Was Not Necessary or Incidental to the Premises Designated in the Schedule and Thus No Coverage Is Afforded by the Greenwich Policies

3001 Arlington is not "necessary or incidental" to those premises listed on the Supplemental Declarations Page. Irrespective of whether 3001 Arlington was used as the management office and operations office for the properties listed on the schedules of the policies, it is excluded from coverage based on the Limitation of Coverage to Designated Premises or Projects. The following case law and analysis clearly shows the flaw in any argument to the contrary.

*Davis v. Block & Smith, Inc.*, 297 N.Y. 20, 74 N.E.2d 220 (1947); *New York Convention Ctr. Operating Corp. v. Morris Cerullo World Evangelism, Inc.*, 269 A.D.2d 275, 704 N.Y.S.2d 211 (1st Dept. 2000); *ZKZ Assoc. LP v. CNA Ins. Co.*, 224 A.D.2d 174, 637 N.Y.S.2d 117 (1st Dep't 1996); and *Royal Globe Ins. Co. v. Dinan*, 42 Misc. 2d 595, 248 N.Y.S.2d 469 (N.Y. Sup. Ct. 1964) establish that the language in the policies regarding "operations necessary or incidental" to a premises, should not be construed to include the underlying claim, which occurred at a premises not expressly designated in the policies and not "necessary" or "incidental" to those covered premises expressly designated in the policies.

In *Davis*, the court held that a workmen's compensation insurance policy did not provide coverage for injury to a handyman employed by the company that was performing work at the president of an insured's home, which was not premises designated for coverage. *Davis*, 74 N.E.2d at 222. The insurance policy included the following language, "all operations necessary, incident or appurtenant thereto, or connected therewith." *Id.* In its decision, the court stated that "The employer here knew the classification of operations and the locations which it was seeking

to cover by compensation insurance." *Id.* at 221. The court further stated that "there is no evidence or claim that the work which claimant was performing at the Bayside home of the corporate president at the time of his injury had any relation to or connection with the operation of the buildings in Corona described in the policy." *Id.* at 223. Thus, the court did not provide coverage under the policy. *Id.* at 222.

Furthermore, in *New York Convention Ctr. Operating Corp.*, the court analyzed an insurance contract that contains almost identical language to the policies at issue. In this case, an underlying plaintiff commenced a personal injury lawsuit against a convention center, because she was allegedly injured due to a dangerous condition of the movable rugs/mats in the entranceway to the convention center. *New York Convention Ctr. Operating Corp.*, 269 A.D.2d at 276. The entranceway was not part of the space that the insured was licensed to use for its conference, but the entranceway was covered by the "right of passage to the Space through the entrance and lobby of the Center" granted to the insured from the premises owner. *Id.* Pursuant to the lease, the lessor obtained a commercial general liability insurance policy, which "coverage for 'bodily injury,' 'personal injury,' and 'medical expenses' (among other categories of damage) 'arising out of ... [the] use of the premises [referenced in the policy declarations] ... and operations necessary or incidental to those premises". *Id.* In its decision, the court stated that a person coming to attend the lessee's conference "had to go through the entranceway" to the convention center in order to reach the conference. *Id.* at 277. Thus, the court declared that the insurance policy covered the lessee for personal injuries suffered in the entranceway to the convention center including the alleged underlying loss. *Id.* This case clearly demonstrates the purpose of the clause at issue, which can provide coverage for an entranceway to a designated premises, although that entranceway may not be part of the designated premises.

Furthermore, *ZKZ Assoc. LP* involves an owner of premises, which included a garage, which was managed by another entity. The management company purchased an insurance

- 10 -

3144718.1

policy naming the owner as an additional insured "only for liability arising out of the ownership, maintenance and use of the described premises which is leased." *ZKZ Assoc. LP,* 224 A.D.2d 175. The policy in that case defined "garage operations" as "the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations" and further states that "[g]arage operations also include all operations necessary or incidental to a garage business." *Id.* After procurement of the policy, both owner and lessee were sued for an accident which allegedly occurred on part of the sidewalk used by vehicles in order to enter the garage. *Id.* at 176. In its decision, the court stated, "without traversing the sidewalk for access to and from the garage, there could be no use at all of the garage as a parking facility. Thus, the special use of the sidewalk for that purpose is an inextricable, indivisible part of the use of the garage and any liability arising from such use clearly comes within the additional insured's coverage." *Id.* Thus, *ZKZ Associates LP* further shows that the limits of application of policy language such as the clause at issue can provide coverage for an adjacent and necessary sidewalk, but not for a premises that is wholly separate and unnecessary.

Furthermore, in *ZKZ Assoc. LP*, the court stated, "While it is a well accepted principle that the duty to defend is broader than the duty to indemnify ( *Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 310),* where it is clear that there is no factual or legal basis for indemnification under a policy, there is similarly no duty to defend and a court should, in such circumstances, so declare ( *Propis v Fireman's Fund Ins. Co., 112 AD2d 734, 736, affd 66 NY2d 828).*" *Id.* at 179. This language is particularly relevant to the Third-Party Complaint against Greenwich, which should be dismissed as the allegations made have no factual or legal basis.

In *Royal Globe Ins. Co.*, an underlying plaintiff, while a guest at a restaurant concession, sought to use the ladies room, but mistook the door on the far side of the room as leading to the toilets. *Royal Globe Ins. Co.*, 248 N.Y.S.2d at 470. In proceeding through that doorway, the guest allegedly fell due to a height discrepancy in the floors. *Id.* By endorsement, the owner

- 11 -

was designated as an additional insured "but only with respect to the ownership, maintenance or use of that part of the premises occupied by the named insured * * * and operations necessary or incidental thereto". *Id.* In its analysis, the court stated that "Incidental' means 'casual or accidental, beside the main design, occasionally' ( Curtis v. Leavitt, 15 N. Y. 9, 169). It 'also has the significance of matters collateral and accessory, directly pertinent to, or in some relation to' (Matter of Grade Crossings of N. Y. Cent. R. R. Co. [Buffalo], 271 App. Div. 266, 276, app. dsmd. 297 N. Y. 246). Its ordinary meaning is 'Of minor importance, occasional, casual, as incidental expenses' ( People ex rel. Cantwell v. Coler, 61 App. Div. 598, 599, affd. on opn. below 168 N. Y. 643)." *Id.* at 471. The court further stated that use of the toilet facilities was incidental to use of the concessionaire's premises, "and the fact that in attempting to make use of those facilities [the underlying plaintiff] mistakenly strayed beyond them, does not make her entry into the vestibule area any less incidental to the concessionaire's use of the premises." *Id.* As a result, the court declared that the insurer must provide coverage. *Id.* at 472. This case further shows the scope of such policy language includes a bathroom in an adjacent premises, but does not go so far as to provide coverage for a premises that is wholly separate and unnecessary.

In addition to the clear language of the policies, the foregoing cases illustrate that 3001 Arlington was not a covered premises, and the claim for which Third-Party Plaintiff seeks insurance coverage should not be afforded coverage by Greenwich. The precedent outlined above, *New New York Convention Ctr. Operating Corp.*, *ZKZ Assoc. LP*, and *Royal Globe Ins. Co.*, demonstrates that "operations necessary or incidental" include those that truly are necessary or incidental, such as a restroom on an adjacent premises, an entranceway that is not defined as part of the premises but must be utilized for access to the designated premises, or the driveway to a garage that cannot be accessed by other means. Moreover, these cases do not support Third-Party Plaintiff's contention that a wholly separate and distantly located, unnecessary premises should be covered by this policy language, as alleged in the Third-Party Complaint.

- 12 -

Even if 3001 Arlington was the insured's management office, coverage would not exist. The policies clearly require all premises to be listed on the Supplemental Declarations Page, which 3001 Arlington is not. Furthermore, the insured's could manage the designated premises from any location in the world, including the home of the insured's president. Under Third-Party Plaintiff's rational, the bounds of coverage for these policies would be limitless, as the operations necessary and incidental to the designated premises include the entire world economy, without which those premises would not be capable of being properly maintained or rented.

Moreover, a "contract of insurance is no different from any other and must be construed in a fair and reasonable manner having regard to the risk and subject matter and the purpose of the policy." *De Forte v. Allstate Ins. Co.*, 81 A.D.2d 465, 442 N.Y.S.2d 307 (4th Dep't 1981). In the instant policies, the explicitly listed premises also include information describing the type premises, class code and number of apartment units. This information is relevant to an insurer because it relates to the risk, subject matter and purpose of the policies. However, 3001 Arlington is not included on the list of covered premises, and information concerning the type of premises, class code and size of 3001 Arlington is not contained in the policies. This is further evidence of the fact that 3001 Arlington is not a covered premises, and thus coverage is not afforded 3001 Arlington for the underlying claim. Moreover, since coverage does not apply, Third-Party Plaintiff's allegations regarding the sequence of coverage and requesting reimbursement of expenses are moot. Accordingly, the Court should dismiss the Third-Party Complaint in its entirety.

3144718 1

## CONCLUSION

Based on the foregoing, Greenwich respectfully requests that this Court grant its motion, pursuant to Rule 12(b)(6), dismissing the Third-Party Complaint in its entirety with prejudice, and for such further relief as this Court deems just and proper.

Dated: New York, New York
       March 17, 2008

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:

GLENN J. FUERTH (GJF 5848)
Attorneys for Third-Party Defendant
GREENWICH INSURANCE
COMPANY
150 East 42nd Street
New York, New York 10017
(212)490-3000
(212) 490-3038 (f)
File No.: 10097.00119

To:     Marshall T. Potashner, Esq.
        Jaffe & Asher LLP
        Attorneys for Defendant/Third-Party Plaintiff
        Liberty Mutual Fire Insurance Company
        600 Third Avenue, 9th Floor
        New York, New York 10016
        (212) 687-3000

        C. William Yanuck, Esq.
        Pillinger Miller Tarallo, LLP
        Attorneys for Plaintiffs
        Ten Seventy One Home Corp. and Morton Yuter
        570 Taxter Road, Suite 275
        Elmsford, New York 10523
        (914) 703-6300
        (914) 703-6688 (f)

- 14 -

3144718.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX
_____X

LEONARD W. HUTCHINGS and JUDY HUTCHINGS,    Index No.: 16037/05
                                            Date Filed: 5/25/05
                        Plaintiffs,

                                            Plaintiff designates Bronx County
                                            as the place of trial
        -against-
                                            The basis of the venue is
                                            Defendant's residence
MORTON G. YUTER, JOSH NEUSTEIN and TEN
SEVENTY ONE HOME CORP.,
                                            SUMMONS
                        Defendants.
_____X

To the above named Defendant:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's attorneys LAW OFFICES OF DANIEL CHAVEZ within 20 days after
the service of this summons, exclusive of the day of service (or within 30 days after the service is
complete if the summons is not personally delivered to you within the State of New York), and in
the case of your failure to appear or answer, judgment will be taken against you by default for the
relief demanded in the complaint.

Dated: Bronx, New York
        May 19, 2005

                                            Yours, etc.,

                                            LAW OFFICES OF DANIEL CHAVEZ
                                            *Attorneys for Plaintiff*
                                            704 East Tremont Avenue
                                            Bronx, New York 10457
                                            (718) 294-4030

Defendants' Addresses:
TO:     MORTON G. YUTER
        5 Dover Avenue
        Garden City, New York 11530-1305

        JOSH NEUSTEIN                       TEN SEVENTY ONE HOME CORP.
        3001 Arlington Avenue               3641 Johnson Avenue
        Bronx, New York 10463               Bronx, New York 10463

14808

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX

------------------------------------------------------------------X

LEONARD W. HUTCHINGS and JUDY HUTCHINGS,

                   Plaintiffs,             **VERIFIED COMPLAINT**

           -against-               Index Number:
                                       Date Filed:

MORTON G. YUTER, JOSH NEUSTEIN and TEN
SEVENTY ONE HOME CORP.,

                   Defendants.

------------------------------------------------------------------X

    Plaintiff, by his attorneys, LAW OFFICES OF DANIEL CHAVEZ complaining of the

defendants, MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP.

alleges upon information and belief as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

    1.    That at all times stated herein, plaintiffs LEONARD W. HUTCHINGS and JUDY

HUTCHINGS were and are residents of the Town of Peekskill, County of Westchester, State of New

York.

    2.    That at all times stated herein, defendant MORTON G. YUTER was and is a resident

of the Town of Garden City, County of Nassau, State of New York.

    3.    That at all times stated herein, defendant JOSH NEUSTEIN was and is a resident of

the County of the Bronx, City and State of New York.

    4.    That at all times stated herein, defendant, TEN SEVENTY ONE HOME CORP., was

and is a domestic corporation, organized and existing under and by virtue of the laws of the State of

New York, and maintains its principal office in the County of the Bronx, City and State of New

York.

5.    That at all times stated herein, defendant JOSH NEUSTEIN, was the owner of a building and property known as and located at 3001 Arlington Avenue, Bronx, New York.

6.    That at all times stated herein, defendant JOSH NEUSTEIN, his agents, servants and/or employees operated the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York.

7.    That at all times stated herein, defendant JOSH NEUSTEIN, his agents, servants and/or employees managed the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York.

8.    That at all times stated herein, defendant JOSH NEUSTEIN, his agents, servants and/or employees maintained the aforesaid property and building at 3001 Arlington Avenue, Bronx, New York.

9.    That at all times stated herein, defendant JOSH NEUSTEIN, his agents, servants and/or employees controlled the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York.

10.    That at all times stated herein, defendant TEN SEVENTY ONE HOME CORP., was the owner of a building and property known as and located at 3001 Arlington Avenue, Bronx, New York.

11.    That at all times stated herein, defendant TEN SEVENTY ONE HOME CORP., its agents, servants and/or employees operated the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York.

12.    That at all times stated herein, defendant TEN SEVENTY ONE HOME CORP., its agents, servants and/or employees managed the aforesaid property and building located at 3001

2

Arlington Avenue, Bronx, New York

13.   That at all times stated herein, defendant TEN SEVENTY ONE HOME CORP., its agents, servants and/or employees maintained the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York.

14.   That at all times stated herein, defendant TEN SEVENTY ONE HOME CORP., its agents, servants and/or employees controlled the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York.

15.   That at all times stated herein, defendant MORTON G. YUTER operated the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York with the permission and consent, express or implied, of its owner(s), defendants JOSH NEUSTEIN and/or TEN SEVENTY ONE HOME CORP.

16.   That at all times stated herein, defendant MORTON G. YUTER managed the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York with the permission and consent, express or implied, of its owner(s), defendants JOSH NEUSTEIN and/or TEN SEVENTY ONE HOME CORP.

17.   That at all times stated herein, defendant MORTON G. YUTER maintained the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York with the permission and consent, express or implied, of its owner(s), defendants JOSH NEUSTEIN and/or TEN SEVENTY ONE HOME CORP.

18.   That at all times stated herein, defendant MORTON G. YUTER controlled the aforesaid property and building located at 3001 Arlington Avenue, Bronx, New York with the permission and consent, express or implied, of its owner(s), defendants JOSH NEUSTEIN and/or

3

TEN SEVENTY ONE HOME CORP.

19:    That at all times stated herein, defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP. had a duty to properly maintain said property and building and to keep said building and all of its appurtenances in a reasonably safe condition.

20.    That at all times stated herein, the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP., their agents, servants and/or employees breached their duty to maintain said property and building and all of its appurtenances in a reasonably safe condition.

21.    That at all times stated herein, the plaintiff LEONARD W. HUTCHINGS was lawfully and legally upon said property and building.

22    That on June 14, 2002, while lawfully upon said property and building premises, plaintiff LEONARD W. HUTCHINGS was caused to sustain serious and severe personal injuries as a result of the negligence of the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP., their agents, servants and/or employees.

23.    That at all times stated herein, defendant MORTON G. YUTER was an agent, servant and/or employee of defendant(s) JOSH NEUSTEIN and/or TEN SEVENTY ONE HOME CORP.

24.    That at all times stated herein, defendant MORTON G. YUTER had actual and/or apparent authority to open and close the overhead garage door attached to the building and premises located at 3001 Arlington Avenue, Bronx, New York, as stated herein.

25.    That at all times stated herein, defendant MORTON G. YUTER was acting within the scope of his employment, as described herein.

26.    That at all times stated herein, the defendant MORTON G. YUTER was acting within

4

the scope of his agency, as described herein.

27.    That on June 14, 2002, while the plaintiff LEONARD W. HUTCHINGS was lawfully and legally upon the aforesaid premises, defendant MORTON G. YUTER did cause the overhead garage door located at said premises to close and thereby strike plaintiff LEONARD W. HUTCHINGS about the head, neck and body, causing serious, severe and permanent injuries.

28.    That the limitations set forth in CPLR Section 1601 do not apply by reason of one or more of the exceptions of CPLR Section 1602.

29.    That the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP., their agents, servants and/or employees were careless, reckless and negligent in the ownership, operation, management, maintenance and control of said premises in that the occurrence was caused as a result of the negligence and carelessness of the defendants, their agents, servants and/or employees which negligence and carelessness consisted, *inter alia*, of the following: The defendants were negligent in the maintenance, ownership, management and control of the aforesaid premises and more particularly, 3001 Arlington Avenue, in the County of the Bronx, City and State of New York; in causing the overhead garage door located at said premises to close and thereby strike plaintiff LEONARD W. HUTCHINGS about the head, neck and body; in failing to look or in failing to look carefully before causing said overhead garage door to close; in failing to see what was there to be seen; in failing to warn plaintiff LEONARD W. HUTCHINGS of impending danger; in failing to train or to train properly any agent, servant and/or employee including, but not limited to, defendant MORTON G. YUTER, in the safe and proper operation of said overhead garage door; in negligently hiring and retaining any agent, servant and/or employee including, but not limited to, defendant MORTON G. YUTER; in negligently entrusting said

5

building and premises to any agent, servant and/or employee who was not trained or not trained properly in the use, operation and control of the subject overhead garage door; in delegating a non-delegable duty; in improperly, carelessly, negligently and recklessly delegating a task to an agent, servant and/or employee who was not trained or not trained properly in the use, operation and control of the subject overhead garage door; in failing to provide a safe place to work; in violating the Labor Laws of the State of New York including, but not limited to, Sections 200, 240(1) and 241(6); in violating the Industrial Code of the State of New York; in violating the rules and regulations of OSHA governing the work being performed upon the premises herein; in violating other applicable rules, regulations, codes, statutes, laws and regulations; in undertaking a duty of care and breaching said duty; in directing plaintiff LEONARD W. HUTCHINGS to proceed to a place of danger; in placing plaintiff LEONARD W. HUTCHINGS in peril; in failing to warn plaintiff LEONARD W. HUTCHINGS of said peril; in causing plaintiff LEONARD W. HUTCHINGS to be placed in a position of danger; in abandoning plaintiff LEONARD W. HUTCHINGS; in failing to keep and maintain said premises in a safe, proper and lawful condition; in causing, permitting and allowing the aforesaid premises to be, become and remain in a dangerous, defective and hazardous condition representing a danger, menace and nuisance to persons lawfully and properly upon the aforesaid premises; in carelessly and negligently failing to have said premises maintained in a proper, safe and lawful condition; in carelessly and negligently failing to have the aforesaid dangerous and hazardous condition properly marked, roped, barricaded and delineated; in carelessly and negligently failing to warn the plaintiff of the dangerous and hazardous condition that existed at the aforesaid location; in failing to take proper steps to apprise the plaintiff and others lawfully upon said premises of the aforesaid dangerous and hazardous condition; in causing, permitting and allowing the aforesaid

6

dangerous and hazardous condition to become and remain at the aforesaid premises; in creating the aforesaid dangerous and hazardous condition; in failing to take proper steps to remedy the aforesaid dangerous and hazardous condition; in carelessly and negligently managing, maintaining and controlling the aforesaid premises and more particularly, 3001 Arlington Avenue, in the County of the Bronx, City and State of New York, which was used by persons lawfully upon said premises; in failing to take proper steps to prevent the happening of the occurrence; in failing to set up proper barriers and safeguards; in causing the aforesaid condition to be a danger to life and limb; in failing to correct the aforesaid dangerous and hazardous condition; in causing, permitting and allowing the dangerous, hazardous and defective condition to exist for an unreasonable period of time, when the defendant knew, or through the exercise of reasonable care, should have known of the existence of the dangerous, hazardous and defective condition; and in otherwise failing to take such necessary and reasonable precautions to avoid the happening of said occurrence. The defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP., their agents, servants and/or employees, were otherwise careless, reckless and negligent under the circumstances then and there existing. In addition to the foregoing, plaintiff reserves the right to rely on the doctrine res ipsa loquitur.

32.     That the foregoing occurrence was caused solely and wholly as a result of the negligence of the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP., their agents, servants, and/or employees, without any negligence on the part of the plaintiff contributing thereto.

33.     That as a result of the foregoing, plaintiff LEONARD W. HUTCHINGS sustained serious, severe and permanent personal injuries and was rendered sick, sore, lame, and disabled;

7

plaintiff LEONARD W. HUTCHINGS, was caused to suffer great pain, discomfort, and disability and, upon information and belief, will continue to suffer pain, discomfort, and disability in the future; plaintiff LEONARD W. HUTCHINGS was caused to undergo hospital and medical care, aid and attention, and upon information and belief, may continue to require to undergo medical care, aid and attention for a long period of time to come in the future; plaintiff was obliged to expend and incur large sums of monies for medical care, aid and attention and, upon information and belief, will continue to be obliged to expend and incur large sums of monies for future medical care, aid and attention; plaintiff LEONARD W. HUTCHINGS, was caused to become incapacitated from his usual vocation and avocation, and upon information and belief, may continue to be caused to remain away from his usual vocation and avocation for a long period of time to come in the future.

34.    That as a result of the foregoing, plaintiff LEONARD W. HUTCHINGS has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION

35.    Plaintiffs repeat, reiterate and reallege each and every paragraph of the complaint numbered "1" through "34" with the same force and effect as if fully set forth at length herein.

36.    That at all times stated herein, plaintiff JUDY HUTCHINGS was and still is the wife of plaintiff LEONARD W. HUTCHINGS and was entitled to and did receive the services and society of her said husband.

37.    That by reason of the aforesaid, plaintiff JUDY HUTCHINGS has been deprived of the support, services, love, companionship, affection and society of her said husband and has been compelled to expend money and incur obligations for physicians services, medical expenses, hospital

8

expenses and for the care and treatment for the injuries sustained by plaintiff LEONARD W. HUTCHINGS.

38.    That the foregoing occurrence was caused solely and wholly as a result of the negligence of the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP., their agents, servants, and/or employees, without any negligence on the part of the plaintiffs contributing thereto.

39.    That as a result of the foregoing, plaintiff JUDY HUTCHINGS has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

WHEREFORE, plaintiff LEONARD W. HUTCHINGS demands a money judgment against the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP. on the first cause of action; plaintiff JUDY HUTCHINGS demands a money judgment against the defendants MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP. on the second cause of action; together with the costs and disbursements of this action.

Dated: Bronx, New York
       May 19, 2005

Yours, etc.

LAW OFFICES OF DANIEL CHAVEZ
*Attorneys for Plaintiff*
704 East Tremont Avenue
Bronx, New York 10457
(718) 294-4030

9

**ATTORNEY'S VERIFICATION**

Daniel Chavez, an attorney duly admitted to practice law before the Courts of the State of New York affirms the truth of the following under penalties of perjury:

I am associated with the law firm of LAW OFFICES OF DANIEL CHAVEZ, attorneys for Plaintiff in the within action; I have read the foregoing Summons & Verified Complaint and know the contents thereof; the same is true to my own knowledge except as to those matters said to be upon information and belief and as to these matters I believe them to be true.

This affirmation is submitted by the undersigned because the Plaintiff is not in the county where I maintain my office.

Dated: Bronx, New York
       May 19, 2005

Daniel Chavez

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------X
TEN SEVENTY ONE HOME CORP.,
and MORTON G. YUTER,
                        Plaintiffs,

        -against-

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
JOSH NEUSTEIN, LEONARD W. HUTCHINGS,
and JUDY HUTCHINGS,
                        Defendants.
------------------------------------X

SUMMONS

Index No. 301992 /07

Dated Purchased: 10/18/07

Plaintiff    designates
Bronx    County    as    the
place of trial.
Basis of Venue:
Defendant's residence.

## TO THE ABOVE-NAMED DEFENDANTS

YOU ARE HEREBY SUMMONED to answer the complaint in this action, and to serve copies of your answer upon the undersigned attorneys for the plaintiffs within twenty (20) days after the service of this summons and complaint, exclusive of the date of service, or within thirty (30) days after service is completed  if service is made by any method other than personal delivery to you within the State Of New York; and in case of your failure to appear and answer, judgment will be taken against you by default for the relief demanded in the complaint.  Plaintiff designates Bronx County as the place of trial.  Basis of venue: County in which defendant Josh Neustein resides, 3001 Arlington Avenue, Bronx, New York 10463.

Dated: Elmsford, New York
        October 17, 2007

Yours, Etc.,
Law Offices of Pillinger, Miller Tarallo, LLP

By: _____
    C. William Yanuck, Esq.
    Attorneys for Plaintiffs
    TEN SEVENTY ONE HOME CORP.
    and MORTON G. YUTER
    570 Taxter Road, Suite 275
    Elmsford, NY 10523
    (914)703-6300
    Our file: HC-00103.1/CWY

To:    See Attached Rider

<u>RIDER</u>

<u>Defendants' Addresses For Service:</u>

LIBERTY MUTUAL FIRE INSURANCE COMPANY
175 Berkeley Street
Boston, Massachusetts 02117

JOSH NEUSTEIN
3001 Arlington Avenue
Bronx, New York 10463

LEONARD W. HUTCHINGS
161 Benefield Boulevard
Peekskill, New York 10566

JUDY HUTCHINGS
161 Benefield Boulevard
Peekskill, New York 10566

- 2 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------X
TEN SEVENTY ONE HOME CORP.
and MORTON G. YUTER,

                    Plaintiffs,

        -against-

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
JOSH NEUSTEIN, LEONARD W. HUTCHINGS, and
JUDY HUTCHINGS,
                    Defendants.
-------------------------------X

VERIFIED COMPLAINT

Index No. 301992/07

Dated Purchased: 10/18/07

Plaintiff   designates
Bronx   County   as   the
place of trial.
Basis of Venue:
Defendant's residence.

Plaintiffs, TEN SEVENTY ONE HOME CORP. and MORTON G. YUTER, by their attorneys, Pillinger Miller Tarallo, LLP, complaining of the defendants, respectfully allege upon information and belief as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

1.   That plaintiff TEN SEVENTY ONE HOME CORP. is and at all times hereinafter mentioned was a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

2.   That plaintiff MORTON G. YUTER is and at all times hereinafter mentioned was a natural person residing in Nassau County in the State of New York

3.   Upon information and belief, that defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY (hereinafter "LIBERTY MUTUAL") is and at all times hereinafter mentioned was a foreign mutual property

- 3 -

and casualty insurance company, duly organized and existing under and by virtue of the Laws of the State of Massachusetts, with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02117.

4.  Upon information and belief, that defendant LIBERTY MUTUAL is and at all times hereinafter mentioned was a foreign business entity, duly organized and existing under and by virtue of the Laws of the State of Massachusetts, with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02117.

5.  Upon information and belief, that defendant LIBERTY MUTUAL is and at all times hereinafter mentioned was authorized to do business and/or was doing business, and/or transacting business, and/or soliciting business, and/or providing services in the State of New York.

6.  Upon information and belief, defendant JOSH NEUSTEIN is an at all times hereinafter was a natural person residing at 3001 Arlington Avenue, Bronx, New York 10463.

7.  Upon information and belief, defendants LEONARD W. HUTCHINGS and JUDY HUTCHINGS (hereinafter "HUTCHINGS") are and at all times hereinafter mentioned were natural persons residing in the State of New York.

8.  That plaintiff TEN SEVENTY ONE HOME CORP. is and at all times hereinafter mentioned was the owner of the property and structure at 3001 Arlington Avenue, Bronx, New York 10463.

- 4 -

9. That defendant JOSH NEUSTEIN is and at all times hereinafter mentioned was the sole shareholder and president of plaintiff TEN SEVENTY ONE HOME CORP.

10. This action arises out of transactions or occurrences in the State of New York.

11. Upon information and belief, that prior hereto defendants HUTCHINGS commenced an action as plaintiffs in the Supreme Court, Bronx County, by the purchase of index number 16037/05, and the filing of a Summons and Verified Complaint on or about May 25, 2005, naming MORTON G. YUTER, JOSH NEUSTEIN and TEN SEVENTY ONE HOME CORP. as defendants. Annexed hereto as Exhibit "A" and made a part hereof is a copy of the aforesaid Summons and Verified Complaint.

12. Upon information and belief, that the aforesaid action is presently being prosecuted in the Supreme Court, Bronx County, under index number 29494/02 by virtue of an Order of consolidation (hereinafter "Underlying Action").

13. That it is alleged in the Verified Complaint bearing index number 16037/05, without admitting the truth thereof, that on June 14, 2002, while defendant LEONARD W. HUTCHINGS was allegedly lawfully on the premises of the residence at 3001 Arlington Avenue, Bronx, New York, he was caused to be injured when an overhead garage door closed and struck him about the head, neck and body

allegedly as a result of the negligence of the defendants named in said action.

14. That on June 14, 2002, plaintiff MORTON G. YUTER was lawfully on the premises of the residence at 3001 Arlington Avenue, Bronx, New York, and present and acting with the knowledge, permission and consent of plaintiff TEN SEVENTY ONE HOME CORP.

15. That on June 14, 2002, plaintiff MORTON G. YUTER was lawfully on the premises of the residence at 3001 Arlington Avenue, Bronx, New York, and present and acting with the knowledge, permission and consent of defendant JOSH NEUSTEIN.

16. Upon information and belief, that prior hereto defendant LIBERTY MUTUAL issued policies of insurance that provided insurance coverage for bodily injury occurring on the premises at 3001 Arlington Avenue, Bronx, New York 10463, which policies were in full force and effect on June 14, 2002.

17. Upon information and belief, that prior hereto defendant LIBERTY MUTUAL issued policies of insurance bearing policy numbers H32 221 376600-001 and LJ1 221 4394060 that provided insurance coverage for bodily injury occurring on the premises at 3001 Arlington Avenue, Bronx, New York 10463, which policies were in full force and effect on June 14, 2002.

18. That on or about June 10, 2005, plaintiff TEN SEVENTY ONE HOME CORP. duly demanded insurance coverage, defense and indemnification from defendant LIBERTY MUTUAL for the claims made

in the lawsuit brought by defendants HUTCHINGS in the Supreme Court, Bronx County, bearing index number 16037/05.

19. That on or about July 11, 2005, defendant LIBERTY MUTUAL disclaimed coverage for plaintiff TEN SEVENTY ONE HOME CORP. on the ground that TEN SEVENTY ONE HOME CORP. was allegedly not a named insured or defined as an insured under the aforesaid policies of insurance. A copy of the disclaimer letter is annexed hereto as Exhibit "B".

20. That defendant LIBERTY MUTUAL disclaimed coverage without basis in fact and/or law and has failed and/or refused to defend and/or indemnify plaintiff TEN SEVENTY ONE HOME CORP. in the Underlying Action.

21. That the failure and/or refusal by defendant LIBERTY MUTUAL to defend and/or indemnify plaintiff TEN SEVENTY ONE HOME CORP. in the Underlying Action was wrongful, willful and in breach of the terms and conditions of the aforesaid policies of insurance.

22. That by reason of the foregoing, plaintiff TEN SEVENTY ONE HOME CORP. has been damaged and continues to be damaged to the extent of all of its costs and attorneys' fees in the defense of the Underlying Action, and may be damaged in the amount of any verdict, judgment or settlement that may be recovered against plaintiff TEN SEVENTY ONE HOME CORP. in said Underlying Action, together with interest, and the costs, disbursements and attorneys' fees of this action.

## AS AND FOR A SECOND CAUSE OF ACTION

23. That plaintiffs repeat, reiterate and reallege each and every allegation in the paragraphs of the Verified Complaint designated "1" through "22", inclusive, with the same force and effect as if fully set forth herein at length.

24. That on or about June 10, 2005, plaintiff MORTON G. YUTER duly demanded insurance coverage, defense and indemnification from defendant LIBERTY MUTUAL for the claims made in the lawsuit brought by defendant HUTCHINGS in the Supreme Court, Bronx County, bearing index number 16037/05.

25. That on or about July 11, 2005, defendant LIBERTY MUTUAL disclaimed coverage for plaintiff MORTON G. YUTER on the ground that MORTON G. YUTER was allegedly not a named insured or defined as an insured under the aforesaid policies of insurance. A copy of the disclaimer letter is annexed hereto as Exhibit "C".

26. That defendant LIBERTY MUTUAL disclaimed coverage without basis in fact and/or law and has failed and/or refused to defend and/or indemnify plaintiff MORTON G. YUTER in the Underlying Action.

27. That the failure and/or refusal by defendant LIBERTY MUTUAL to defend and/or indemnify plaintiff MORTON G. YUTER in the Underlying Action was wrongful, willful and in breach of the terms and conditions of the aforesaid policies of insurance.

- 8 -

28    That by reason of the foregoing, plaintiff MORTON G.
YUTER has been damaged and continues to be damaged to the extent of
all of his costs and attorneys' fees in the defense of the
Underlying Action, and may be damaged in the amount of any verdict,
judgment or settlement that may be recovered against plaintiff
MORTON G. YUTER in said Underlying Action, together with interest,
and the costs, disbursements and attorneys' fees of this action.

### AS AND FOR A THIRD CAUSE OF ACTION

29    That plaintiffs repeat, reiterate and reallege each and
every allegation in the paragraphs of the Verified Complaint
designated "1" through "28", inclusive, with the same force and
effect as if fully set forth herein at length.

30    That through the mutual mistake of plaintiff TEN,
SEVENTY ONE HOME CORP. and defendant LIBERTY MUTUAL, the ownership
of the property and structure at 3001 Arlington Avenue, Bronx, New
York was mis-described on the policies of insurance issued by
defendant LIBERTY MUTUAL, and said policies should be reformed to
state that plaintiff TEN SEVENTY ONE HOME CORP. was the owner of
the property and structure during the policy period including June
14, 2002.

31    That the intent of the policies of insurance as written
by defendant LIBERTY MUTUAL was to provide insurance coverage,
defense and indemnification for the owner of the property and
structure at 3001 Arlington Avenue, Bronx, New York, plaintiff TEN

- 9 -

SEVENTY ONE HOME CORP., and for those lawfully on the premises of the residence, and present and acting with the permission and consent of plaintiff TEN SEVENTY ONE HOME CORP., including plaintiff MORTON G. YUTER.

32. That by reason of the foregoing, the aforesaid policies of insurance must be reformed to add plaintiff TEN SEVENTY ONE HOME CORP. as a named insured, and upon such reformation of the policies, that it be adjudged and decreed that defendant LIBERTY MUTUAL shall defend and indemnify plaintiffs TEN SEVENTY ONE HOME CORP. and MORTON G. YUTER in the Underlying Action pending in the Supreme Court, Bronx County.

WHEREFORE, plaintiffs TEN SEVENTY ONE HOME CORP. and MORTON G. YUTER demand that this Court determine, adjudge and decree, pursuant to CPLR Section 3001, that defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY in the first cause of action is liable to provide insurance coverage, defense and indemnification to plaintiff TEN SEVENTY ONE HOME CORP. in the Underlying Action pending in the Supreme Court, Bronx County, presently bearing index number 29494/02 to the full extent of its policy limits; and that defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY in the second cause of action is liable to provide insurance coverage, defense and indemnification to plaintiff MORTON G. YUTER in the Underlying Action pending in the Supreme Court, Bronx County, presently bearing index number 29494/02, to the full extent of its policy

- 10 -

-limits; and in the third cause of action that this Court determine, adjudge and decree, pursuant to CPLR Section 3001, that the policies of insurance issued by defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY be reformed to include TEN SEVENTY ONE HOME CORP. as a named insured, and that upon such reformation that defendant LIBERTY MUTUAL shall provide insurance coverage, defense and indemnification to plaintiffs TEN SEVENTY ONE HOME CORP. and MORTON G. YUTER in the Underlying Action pending in the Supreme Court, Bronx County, presently bearing index number 29494/02, to the full extent of its policy limits; all causes of action together with interest, and the costs, disbursements and attorneys' fees of this action.

Dated:  Elmsford, New York
        October 17, 2007

                    *Yours, etc.,*

                    PILLINGER MILLER TARALLO, LLP
                    Attorneys for Plaintiffs
                    Ten Seventy One Home Corp. and
                    Morton G. Yuter
                    570 Taxter Road
                    Suite 275
                    Elmsford, New York 10523
                    (914) 703-6300
                    Our File No.  HC-00103.1/CWY

- 11 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

TEN SEVENTY ONE HOME CORP.                    Civil Action No.
and MORTON G. YUTER,                          07 Civ. 11211 (DC)

                              Plaintiffs,

        -against-

LIBERTY MUTUAL FIRE INSURANCE              **THIRD-PARTY COMPLAINT**
COMPANY, JOSH NEUSTEIN, LEONARD
W. HUTCHINGS, and JUDY HUTCHINGS.

                              Defendants.
-----------------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

                    Third-Party Plaintiff,

        -against-

GREENWICH INSURANCE COMPANY,

                    Third-Party Defendant.
-----------------------------------------------------------x



**M A D A M S/S I R S:**

        Defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty

Mutual"), by its attorneys, JAFFE & ASHER LLP, as and for its Third-Party Complaint

against third-party defendant GREENWICH INSURANCE COMPANY ("Greenwich"),

alleges as follows:

        1.    This Court has jurisdiction over this matter (1) pursuant to 28 U.S.C.

§ 1332(a) by reason of the diversity of citizenship of the parties and the fact that the

                                          1

amount in controversy exceed the sum of $75,000 exclusive of costs; and (2) pursuant to 28 U.S.C. § 1367.

2.     At all times hereinafter mentioned, Liberty Mutual was, and still is, a stock insurance company organized pursuant to the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts.

3.     At all times hereinafter mentioned, Liberty Mutual was, and still is, an insurance company duly authorized to engage in the insurance business in the State of New York.

4.     At all times hereinafter mentioned, Greenwich was, and still is, a stock insurance company organized pursuant to the laws of the State of Delaware, with its principal place of business located at 70 Seaview Avenue, Stamford, Connecticut 06902-6040.

5.     At all times hereinafter mentioned, Greenwich was, and still is, an insurance company duly authorized to engage in the insurance business in the State of New York.

6.     Upon information and belief, on or about May 25, 2005, an underlying action entitled Leonard W. Hutchings and Judy Hutchings v. Morton G. Yuter, Josh Neustein, and Ten Seventy One Home Corp., Index No. 16037/05, was commenced in the Supreme Court of the State of New York, County of Bronx (the "Underlying Action").

2

7.    Upon information and belief, in the Underlying Action, the plaintiffs seek recovery damages because of bodily injury allegedly suffered by plaintiff Leonard W. Hutchings when he was struck on the head, neck, and body by an overhead garage door on June 14, 2002, which occurred at premises located at 3001 Arlington Avenue, Bronx, New York.

8.    Upon information and belief, Greenwich issued a Commercial General Liability insurance policy, No. WGG 5001567, to plaintiff TEN SEVENTY ONE HOME CORP. ("Ten Seventy") and Josh Neustein, with a policy period from February 12, 2002 to February 12, 2003 (the "Greenwich Policy").

9.    Upon information and belief, Ten Seventy and Josh Neustein are insureds under the terms of the Greenwich Policy.

10.    Upon information and belief, plaintiff MORTON G. YUTER ("Yuter"), if he is an employee of Ten Seventy, is an insured of Ten Seventy for acts within the scope of his employment with Ten Seventy or while performing duties related to the conduct of Ten Seventy's business under the terms of the Greenwich Policy.

11.    Upon information and belief, Greenwich was duly notified of the Underlying Action.

12.    Upon information and belief, although duly requested, Greenwich has failed and refused to provide a defense or indemnity to Ten Seventy and Yuter for the Underlying Action.

3

13.    Upon information and belief, Yuter is an insured under the Greenwich Policy for the claims alleged in the Underlying Action.

14.    Liberty Mutual issued a LibertyGuard Deluxe Homeowners Policy, No. H32-221-376600-001, to Josh Neustein, with a policy period from October 21, 2001 to October 21, 2002 (the "Liberty Mutual Policy").

15.    The Liberty Mutual Policy provides, in pertinent part, as follows:

> This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

16.    Pursuant to the terms of the Liberty Mutual Policy and the Greenwich Policy, Greenwich owes the primary duty to defend and indemnify Josh Neustein for the claims alleged in the Underlying Action.

17.    Pursuant to the terms of the Liberty Mutual Policy and the Greenwich Policy, the Liberty Mutual Policy applies in excess of the Greenwich Policy for the claims alleged in the Underlying Action with respect to any common insured.

18.    On or about October 18, 2007, Ten Seventy and Yuter commenced the above-entitled action. A copy of Ten Seventy and Yuter's Summons and Complaint is annexed hereto as Exhibit "1".

## AS AND FOR A FIRST CLAIM FOR RELIEF

19.    Liberty Mutual repeats and realleges each and every allegation contained in paragraphs "1" through "18" above, inclusive, as though fully stated herein.

4

20.    Liberty Mutual denies that Ten Seventy and/or Yuter are insureds under any insurance policy it issued; but should this Court determine that Ten Seventy and/or Yuter are insureds under an insurance policy issued by Liberty Mutual for the Underlying Action then such entity or entities would also be insureds and/or additional insureds under the Greenwich Policy.

21.    In addition, Josh Neustein is an insured under the Greenwich Policy.

22.    Liberty Mutual denies any coverage obligation on its part; but if Liberty Mutual is determined liable or responsible for insuring Ten Seventy and/or Yuter, then Liberty Mutual is entitled to a judgment declaring the respective rights and obligations of Liberty Mutual and Greenwich regarding the priority of coverage for Ten Seventy and Yuter for the Underlying Action and declaring that Greenwich is to reimburse Liberty Mutual for all or its respective share of any amount Liberty Mutual is declared to owe Ten Seventy and Yuter.

23.    Liberty Mutual is also entitled to a declaratory judgment that Greenwich owed a duty to defend and indemnify Josh Neustein for the Underlying Action and that coverage under the Greenwich Policy is primary to any coverage provided to Josh Neustein under the Liberty Mutual Policy.

24.    Liberty Mutual has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

25.    Liberty Mutual repeats and realleges each and every allegation contained in paragraphs "1" through "24" above, inclusive, as though fully stated herein.

26.    Greenwich has failed and refused to acknowledge its coverage obligations for Josh Neustein and to reimburse Liberty Mutual for costs incurred in defending him in the Underlying Action.

27.    As a result of Greenwich's breach of its duty to defend Josh Neustein for the Underlying Action, Liberty Mutual has incurred substantial attorneys' fees and other costs in the defense of the Underlying Action.

28.    As a result of the foregoing, Liberty Mutual is entitled to a money judgment against Greenwich in an amount equal to what they have incurred and will occur in defending the Underlying Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, third-party plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment as follows:

1.    On the first claim of relief causes of action, judgment over and against third-party defendant GREENWICH INSURANCE COMPANY for any and all part of any verdict or judgment which shall be or may be had against third-party plaintiff by plaintiffs TEN SEVENTY ONE HOME CORP. and MORTON G. YUTER, and a declaratory judgment that third-party defendant GREENWICH INSURANCE COMPANY owes plaintiffs and Josh Neustein a duty to defend and indemnify with respect to the Underlying Action and that coverage under the Greenwich Policy is primary to any coverage provided under the Liberty Mutual Policy;

6

2.   On the second claim for relief, judgment against third-party

defendant GREENWICH INSURANCE COMPANY in an amount to be determined by the

Court, plus interest; and

4.   Granting third-party plaintiff LIBERTY MUTUAL FIRE INSURANCE

COMPANY the costs and disbursements of the above-entitled action, together with such

other and further relief as which this Court deems just and proper.

Dated:   New York, New York
         January 7, 2008

                              Yours, etc.,

                              JAFFE & ASHER LLP

                              By: _____
                                 Marshall T. Potashner, Esq. (MTP-3552)
                                 Attorneys for Defendant/Third-Party Plaintiff
                                 LIBERTY MUTUAL FIRE INSURANCE
                                 COMPANY
                                 600 Third Avenue, 9th Floor
                                 New York, New York  10016
                                 (212) 687-3000

TO:   LAW OFFICES OF PILLINGER MILLER TARALLO, LLP
      Attorneys for Plaintiffs
      TEN SEVENTY ONE HOME CORP.
      and MORTON G. YUTER
      570 Taxter Road, Suite 275
      Elmsford, New York  10523
      (914) 703-6300



## Greenwich Insurance Company
70 Seaview Avenue, Stamford, CT 06902-6040

### COMMON POLICY DECLARATIONS

**PRODUCER NAME:** GLN Worldwide

**POLICY NO.** WGG 5001567

**NAMED INSURED**    Ten Seventy One Home Corp. & Josh Neustein

**MAILING ADDRESS** 3001 Arlington Ave.
Bronx, NY 10463

**POLICY PERIOD:** From: _February 15, 2002_ to _February 15, 2003_ at
12:01 A.M. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION** Corporation

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
BE SUBJECT TO ADJUSTMENT.

| | **PREMIUM** |
|---|---|
| Commercial Property Coverage Part | $_____ |
| Commercial Garage Liability Coverage Part | $_____ |
| Commercial Crime Coverage Part | $_____ |
| Commercial General Liability (Non-Terrorism) Coverage Part | $33,250.00 |
| Commercial General Liability (Terrorism) Coverage Part | Not Taken |
| Commercial Property Coverage Part | $_____ |

**TOTAL** $33,250

Premium shown is payable: _$33,250_ at inception _$33,250_

Forms applicable to all Coverage Parts:_____ See Schedule Attached

**(Show numbers.)**

COUNTERSIGNED_____ BY_____
(Date)                                    (Authorized Representative)

IN WITNESS WHEREOF, this Company has caused this Policy to be signed by its President and its Secretary and countersigned by a duly authorized representative.

This form includes copyrighted material of Insurance Services Office with its permission.

President                                    Secretary

Copyright, Insurance Services Office, Inc., 1983, 1984

# GREENWICH INSURANCE COMPANY
### 70 Seaview Avenue, Stamford, CT 06902-6040

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Renewal of Number*

**Policy No.  WGG 5001567**

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)*
**Ten Seventy One Home Corp. & Josh Neustein**
**3001 Arlington Ave.**
**Bronx, NY  10463**

Policy Period *: From    **February 15, 2002**    to    **February 15, 2003**    at 12:01 A.M. Standard Time at your mailing
address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
|---|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $2,000,000 | |
| Products—Completed Operations Aggregate Limit | $Included | |
| Personal and Advertising Injury Limit | $1,000,000 | |
| Each Occurrence Limit | $1,000,000 | |
| Fire Damage Limit | $50,000 | Any One Fire |
| Medical Expense Limit | $5,000 | Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**
Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive
Date, if any, shown here:_____
(Enter Date or "None" if no Retroactive Date applies)

**DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES**
Form of Business:
**Corporation**
Business Description*:
**Apartments**

Location of All Premises You Own, Rent or Occupy:

   **See Schedule Attached**

| PREMIUM | Non-Terrorism Premium: | $33,250.00 | + Terrorism Premium: | Not Taken | = $33,250 |
|---|---|---|---|---|---|

| Classification | Code No. | Premium Basis | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |
| See Schedule Attached | | | | | | |
| | | | Total Advance Premium | $ | | |

Premium shown is payable*:  $        at inception; $        1st Anniversary; $        2nd Anniversary

**FORMS AND ENDORSEMENTS**
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue†:

   **See Schedule Attached**

Countersigned:*_____

By    *Thomas Wilson*
                                       Authorized Representative

*Entry optional if shown in Common Policy Declarations.
†Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE
FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984

JDL 190 (2)-0 (11-85)

## Commercial General Liability
## Supplemental Declarations Page

Policy No: WGG 5001567

**Location of all premises you own, rent or occupy:**

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 1    74-78 Post Ave.<br>New York, NY 10034 | Apartments<br>Bldg or Premises | 60022<br>61217 | 69 units<br>1,000 sq. ft. | |

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 2    682 Academy Street<br>New York, NY 10034 | Apartments | 60022 | 31 units | |

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Premises:** | Per supplementary declarations page form GLSD (6/99) |
| **Project:** | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

CG 21 44 07 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1

# Forms Schedule

Named Insured    Ten Seventy One Home Corp. & Josh Neustein

Policy No: WGG 5001567          Greenwich Insurance Company

Policy No:

| Form Name | Form Edition No |
|-----------|-----------------|
| Commercial General Liability | CG 0001 (07/98) |
| Total Pollution Exclusion - Except Hostile Fire | CG 21 55 |
| Employment Practices Exclusion | CG 21 47 07 98 |
| Nuclear Energy Liability Exclusion Endorsement | IL 00 21 07 02 |
| Designated Premises Endorsement | CG 21 44 07 98 |
| Common Policy Conditions | IL 0017 (11/98) |
| Supplemental Declarations Page | GL SD (6/99) |
| Amendment of Other Insurance Condition(Occurrence) | CG 0055 (03/97) |
| Asbestos Exclusion | GENL103 (7/99) |
| NY - Changes - Cancellation & Non-Renewal | IL 0268 (07/00) |
| New York Changes - CGL Coverage Form | CG 01 63 09 99 |



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

  **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

#### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  **(1)** That the insured would have in the absence of the contract or agreement; or

  **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

 Copyright, Insurance Services Office, Inc., 1997

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** Arising out of a criminal act committed by or at the direction of any insured;

**(5)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(8)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(9)** Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

**(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Copyright, Insurance Services Office, Inc., 1997

**(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by,

        **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.



## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

    (1) The injury or damage arises out of:

        (a) Goods or products made or sold by you in the territory described in **a.** above; or

        (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

    (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

  **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)** You;

    **(2)** Others trading under your name; or

    **(3)** A person or organization whose business or assets you have acquired; and

  **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  "Your product" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **b.** The providing of or failure to provide warnings or instructions.

  "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf; and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

  "Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **b.** The providing of or failure to provide warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1997



COMMERCIAL GENERAL LIABILITY
CG 21 55 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of Coverage **A – Bodily Injury And Property Damage Liability (Section I – Coverages)** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 55 07 98          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1          □

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

IL 00 21 07 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

IL 00 21 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2    □

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

    Copyright, Insurance Services Office, Inc., 1998       □

COMMERCIAL GENERAL LIABILITY
CG 00 55 03 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF OTHER INSURANCE CONDITION (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition – **(Section IV – Commercial General Liability Conditions)** is replaced by the following:

**4. Other Insurance**

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(c) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of COVERAGE **A** (SECTION **I**).

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under COVERAGES **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Copyright, Insurance Services Office, Inc., 1996

## ENDORSEMENT

Named Insured    Ten Seventy One Home Corp. & Josh Neustein

Policy Effective Date:    2/15/2002

Policy Expiration Date:    2/15/2003

This endorsement effective:  12:01 A.M.    2/15/2002    forms a part of

Policy No: WGG 5001567    Greenwich Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy does not apply to liability for any injury including "bodily injury", "property damage", "personal injury" or "advertising injury" any of which arise out of asbestos, including but not limited to:

1) inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2) the use of asbestos from any goods, products or structures; or

3) the removal of asbestos in constructing or manufacturing any goods, products or structures; or

4) the manufacture, transportation, storage, handling, distribution, sale, application, mining, consumption, or disposal of asbestos or goods or products containing asbestos.

All other terms and conditions remain the same.

*Thomas Wilson*

(Authorized Representative)

GENL103 (7/99)

INTERLINE
IL 02 68 07 00

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1.**, **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.a.(2)** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

**(a)** Nonpayment of premium;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(d)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**(e)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(f)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

**(g)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

     Copyright, Insurance Services Office, Inc., 1999         □

(2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part or the Farm Coverage Part is made a part of this policy:

**1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

a. The policy is issued or issued for delivery in New York State covering property located in this state; and

b. The policy insures:

(1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

(2) For loss of or damage to personal property other than farm personal property or business property; or

(3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

**2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this policy:

(1) Has been in effect for more than 60 days; or

(2) Is a renewal of a policy we issued:

we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Conviction of a crime arising out of acts increasing the risk of loss;

(3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

(4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

(5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

(a) Issued the policy; or

(b) Last voluntarily renewed the policy;

(6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

(7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

(1) The policy limits be changed; or

(2) Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

    Copyright, Insurance Services Office, Inc., 1999       □

**G.** The following provisions apply when the following are made a part of this policy:
Commercial General Liability Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

Copyright, Insurance Services Office, Inc., 1999

COMMERCIAL GENERAL LIABILITY
CG 01 63 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

# Greenwich Insurance Company

70 Seaview Avenue, Stamford, CT 06902-6040

## COMMON POLICY DECLARATIONS

**PRODUCER NAME:** GLN Worldwide

**POLICY NO.** WGG 5001564

**NAMED INSURED** 2486, LLC

**MAILING ADDRESS** c/o 1071 Home Corporation
3001 Arlington Ave.
Bronx, NY 10463

**POLICY PERIOD:** From: February 15, 2002 to February 15, 2003 at 12:01 A.M. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION** Corporation

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial Garage Liability Coverage Part | $ |
| Commercial Crime Coverage Part | $ |
| Commercial General Liability (Non-Terrorism) Coverage Part | $31,600.00 |
| Commercial General Liability (Terrorism) Coverage Part | Not Taken |
| Commercial Property Coverage Part | $ |
| **TOTAL** | $31,600 |

Premium shown is payable:   $31,600   at inception   $31,600

Forms applicable to all Coverage Parts: See Schedule Attached
(Show numbers.)

COUNTERSIGNED_____ BY _____
(Date)                                              (Authorized Representative)

IN WITNESS WHEREOF, this Company has caused this Policy to be signed by its President and its Secretary and countersigned by a duly authorized representative.

This form includes copyrighted material of Insurance Services Office with its permission.

President                                            Secretary

Copyright, Insurance Services Office, Inc., 1983, 1984



# GREENWICH INSURANCE COMPANY
70 Seaview Avenue, Stamford, CT 06902-6040

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Renewal of Number*

**Policy No.** WGG 5001584

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)*

**2486, LLC**

**c/o 1071 Home Corporation**
**3001 Arlington Ave.**
**Bronx, NY 10463**

Policy Period *: From   **February 15, 2002**   to   **February 15, 2003**   at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $2,000,000 |
| Products—Completed Operations Aggregate Limit | $Included |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Fire Damage Limit | $50,000   Any One Fire |
| Medical Expense Limit | $5,000   Any One Person |

## RETROACTIVE DATE (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: _____
(Enter Date or "None" if no Retroactive Date applies)

## DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES

Form of Business:

**Corporation**
Business Description*:

**Apartments**

Location of All Premises You Own, Rent or Occupy:

    See Schedule Attached

| PREMIUM | Non-Terrorism Premium: | $31,600.00 | + Terrorism Premium: | Not Taken | = $31,600 |
|---|---|---|---|---|---|

| Classification | Code No. | Premium Basis | Pr/Co Rate | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |
| See Schedule Attached | | | | | | |
| | | | Total Advance Premium | $ | | |

Premium shown is payable*: $ _____ at inception; $ _____ 1st Anniversary; $ _____ 2nd Anniversary

## FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue†:

    See Schedule Attached

Countersigned:* _____   By   *Thomas Wilson* _____
                                              Authorized Representative

*Entry optional if shown in Common Policy Declarations.
†Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| | |
|---|---|
| **Premises:** | Per supplementary declarations page form GLSD (6/99) |
| **Project:** | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

## Commercial General Liability
## Supplemental Declarations Page

Policy No:  WGG 5001564

Location of all premises you own, rent or occupy:

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 1   2821 Briggs Ave.<br>Bronx, NY  10458 | Apartments | 60022 | 32 units | |
| 2   502 West 213th Street<br>New York, NY  10034 | Apartments | 60022 | 26 units | |
| 3   620 West 182nd St.<br>New York, NY  10033 | Apartments | 60022 | 16 units | |
| 4   2486 Morris Ave.<br>Bronx, NY  10458 | Apartments | 60022 | 22 units | |

GL SD (6/99)

# Forms Schedule

Named Insured    2486, LLC

Policy No: WGG 5001564          Greenwich Insurance Company

Policy No:

| Form Name | Form Edition No |
|---|---|
| Commercial General Liability | CG 0001 (07/98) |
| Total Pollution Exclusion - Except Hostile Fire | CG 21 55 |
| Employment Practices Exclusion | CG 21 47 07 98 |
| Nuclear Energy Liability Exclusion Endorsement | IL 00 21 07 02 |
| Designated Premises Endorsement | CG 21 44 07 98 |
| Common Policy Conditions | IL 0017 (11/98) |
| Supplemental Declarations Page | GL SD (6/99) |
| Amendment of Other Insurance Condition(Occurrence) | CG 0055 (03/97) |
| Asbestos Exclusion | GENL103 (7/99) |
| Named Insured Endorsement | Nameins(f1 02/95) |
| NY - Changes - Cancellation & Non-Renewal | IL 0268 (07/00) |
| New York Changes - CGL Coverage Form | CG 01 63 09 99 |

COMMERCIAL GENERAL LIABILITY
CG 00 55 03 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF OTHER INSURANCE CONDITION (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph 4.b. of the **Other Insurance** Condition – (**Section IV – Commercial General Liability Conditions**) is replaced by the following:

4. **Other Insurance**

   b. **Excess Insurance**

   This insurance is excess over:

   (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   (c) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of COVERAGE A (SECTION I).

   (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under COVERAGES A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

## NAMED INSURED SCHEDULE

Named Insured    2486, LLC

Policy Effective Date:    2/15/2002
Policy Expiration Date:    2/15/2003

        This endorsement effective:   12:01 A.M.    2/15/2002    forms a part of

Policy No: WGG 5001564          Greenwich Insurance Company

Policy No:

    2486, LLC
    1071 Home Corporation
    Josh Neustein

NameIns(F1 02/95)

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98     □

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

CG 00 01 07 98    Copyright, Insurance Services Office, Inc., 1997       □

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Copyright, Insurance Services Office, Inc., 1997

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

# COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

## 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

# COVERAGE C MEDICAL PAYMENTS

## 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

(2) Provides us with written authorization to:

   (a) Obtain records and other information related to the "suit"; and

   (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

   (a) Owned, occupied or used by,

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1997



COMMERCIAL GENERAL LIABILITY
CG 21 55 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., **Exclusions of Coverage A – Bodily Injury And Property Damage Liability (Section I – Coverages)** is replaced by the following:

f. **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

This insurance does not apply to:

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

IL 00 21 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

IL 00 21 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2



2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

## ENDORSEMENT

Named Insured    2486, LLC

Policy Effective Date:    2/15/2002
Policy Expiration Date:    2/15/2003

This endorsement effective:   12:01 A.M.    2/15/2002       forms a part of

Policy No: WGG 5001564         Greenwich Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy does not apply to liability for any injury including "bodily injury", "property damage", "personal injury" or "advertising injury" any of which arise out of asbestos, including but not limited to:

1)   Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2)   the use of asbestos from any goods, products or structures; or

3)   the removal of asbestos in constructing or manufacturing any goods, products or structures; or

4)   the manufacture, transportation, storage, handling, distribution, sale, application, mining, consumption, or disposal of asbestos or goods or products containing asbestos.

All other terms and conditions remain the same.

_Thomas Wilson_
(Authorized Representative)

GENL103 (7/99)

INTERLINE
IL 02 68 07 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs 1., 2., 3. and 5. of the **Cancellation** Common Policy Condition are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Of Policies In Effect**

   a. **60 Days Or Less**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1) 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph A.2.a.(2) below.

   (2) 15 days before the effective date of cancellation if we cancel for any of the following reasons:

      (a) Nonpayment of premium;

      (b) Conviction of a crime arising out of acts increasing the hazard insured against;

      (c) Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

      (d) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

(e) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(f) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

(g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

Copyright, Insurance Services Office, Inc., 1999

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

b. **For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph A.2.a.(2) above, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the **Cancellation** Common Policy Condition:

7. If one of the reasons for cancellation in Paragraphs A.2.a.(2) or D.2.b.(2) exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

C. The following Conditions are added:

1. **Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph C.3. below.

2. **Conditional Renewal**

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph C.3. below.

3. **Notices Of Nonrenewal And Conditional Renewal**

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs C.1. and C.2. above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1) The expiration date; or

(2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d. If we violate any of the provisions of Paragraphs C.3.a., b. or c. above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

(1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

Copyright, Insurance Services Office, Inc., 1999

IL 02 68 07 00

(2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the Commercial Property Coverage Part or the Farm Coverage Part is made a part of this policy:

1. Items D.2. and D.3. apply if this policy meets the following conditions:

   a. The policy is issued or issued for delivery in New York State covering property located in this state; and

   b. The policy insures:

      (1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

      (2) For loss of or damage to personal property other than farm personal property or business property; or

      (3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

   c. The portion of the annual premium attributable to the property and contingencies described in 1.b. exceeds the portion applicable to other property and contingencies.

2. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

   2. **Procedure And Reasons For Cancellation**

      a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

         (1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

         (2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this policy:

   (1) Has been in effect for more than 60 days; or

   (2) Is a renewal of a policy we issued;

   we may cancel this policy only for one or more of the following reasons:

   (1) Nonpayment of premium;

   (2) Conviction of a crime arising out of acts increasing the risk of loss;

   (3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

   (4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

   (5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

      (a) Issued the policy; or

      (b) Last voluntarily renewed the policy;

   (6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

   (7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

   a. **Conditional Continuation**

      Instead of cancelling this policy, we may continue it on the condition that:

      (1) The policy limits be changed; or

      (2) Any coverage not required by law be eliminated.

      If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

Copyright, Insurance Services Office, Inc., 1999

b. **Nonrenewal**

If, as allowed by the laws of New York State, we:

(1) Do not renew this policy; or

(2) Condition policy renewal upon:

(a) Change of limits; or

(b) Elimination of coverage;

we will mail or deliver written notice of non-renewal or conditional renewal:

(a) At least 45 days; but

(b) Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

E. The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions and the Commercial Property Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

2. Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in E.1. and E.2. above supersede any contrary provisions in this policy including this endorsement.

If the notice in E.1. or E.2. above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F. The following applies to the Commercial Property Coverage Part and the Farm Coverage Part:

Paragraphs f. and g. of the **Mortgageholders** Condition are replaced by the following:

f. **Cancellation**

(1) If we cancel this policy, we will give written notice to the mortgageholder at least:

(a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(2) If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

(a) The effective date of cancellation of the insured's coverage; or

(b) 10 days after we give notice to the mortgageholder.

g. **Nonrenewal**

(1) If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

(2) If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

(a) The expiration date of the policy; or

(b) 10 days after we give notice to the mortgageholder.

Copyright, Insurance Services Office, Inc., 1999

IL 02 68 07 00

G. The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Products/Completed Operations Liability Coverage Part

1. The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph C.3.d. above.

2. The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

Copyright, Insurance Services Office, Inc., 1999

COMMERCIAL GENERAL LIABILITY
CG 01 63 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES
## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph 1. Insuring Agreement of Section I –
Coverage A – Bodily Injury And Property Dam-
age Liability is replaced by the following:

1. **Insuring Agreement**

    a. We will pay those sums that the insured
    becomes legally obligated to pay as dam-
    ages because of "bodily injury" or "property
    damage" to which this insurance applies.
    We will have the right and duty to defend
    the insured against any "suit" seeking those
    damages even if the allegations of the "suit"
    are groundless, false or fraudulent. How-
    ever, we will have no duty to defend the in-
    sured against any "suit" seeking damages
    for "bodily injury" or "property damage" to
    which this insurance does not apply. We
    may, at our discretion, investigate any "oc-
    currence" and settle any claim or "suit" that
    may result. But:

    (1) The amount we will pay for damages is
    limited as described in Section III – Lim-
    its Of Insurance; and

    (2) Our right and duty to defend end when
    we have used up the applicable limit of
    insurance in the payment of judgments
    or settlements under Coverages A or B
    or medical expenses under Coverage C.

    No other obligation or liability to pay sums
    or perform acts or services is covered
    unless explicitly provided for under Supple-
    mentary Payments – Coverages A and B.

    b. This insurance applies to "bodily injury" and
    "property damage" only if:

    (1) The "bodily injury" or "property damage"
    is caused by an "occurrence" that takes
    place in the "coverage territory";

    (2) The "bodily injury" or "property damage"
    occurs during the policy period; and

(3) Prior to the policy period, no insured
listed under Paragraph 1. of Section II –
Who Is An Insured and no "employee"
authorized by you to give or receive no-
tice of an "occurrence" or claim, knew
that the "bodily injury" or "property dam-
age" had occurred, in whole or in part. If
such a listed insured or authorized "em-
ployee" knew, prior to the policy period,
that the "bodily injury" or "property dam-
age" occurred, then any continuation,
change or resumption of such "bodily in-
jury" or "property damage" during or af-
ter the policy period will be deemed to
have been known prior to the policy pe-
riod.

c. "Bodily injury" or "property damage" which
occurs during the policy period and was not,
prior to the policy period, known to have oc-
curred by any insured listed under Para-
graph 1. of Section II – Who Is An Insured
or any "employee" authorized by you to give
or receive notice of an "occurrence" or
claim, includes any continuation, change or
resumption of that "bodily injury" or "prop-
erty damage" after the end of the policy pe-
riod.

d. "Bodily injury" or "property damage" will be
deemed to have been known to have oc-
curred at the earliest time when any insured
listed under Paragraph 1. of Section II –
Who Is An Insured or any "employee" au-
thorized by you to give or receive notice of
an "occurrence" or claim:

    (1) Reports all, or any part, of the "bodily
    injury" or "property damage" to us or any
    other insurer;

    (2) Receives a written or verbal demand or
    claim for damages because of the "bod-
    ily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

B. Paragraph 1.a. of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

C. The following is added as Paragraph e. to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition (Paragraph 2. of Section IV – Commercial General Liability Conditions):**

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

e. Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. The definition of "loading or unloading" in the Definitions Section does not apply.

Copyright, Insurance Services Office, Inc., 1999

CG 01 63 09 99

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK   )

RAY HUGHES, being duly sworn, hereby deposes and says: that deponent is not a party to the action, is over 18 years of age and resides in New York, New York.

That on the 17th day of March, 2008, deponent served the within NOTICE OF MOTION upon:

Marshall T. Potashner, Esq.
Jaffe & Asher LLP
Attorneys for Defendant/Third-Party Plaintiff
Liberty Mutual Fire Insurance Company
600 Third Avenue, 9th Floor
New York, New York 10016

C. William Yanuck, Esq.
Pillinger Miller Tarallo, LLP
Attorneys for Plaintiffs
Ten Seventy One Home Corp. and Morton Yuter
570 Taxter Road, Suite 275
Elmsford, New York 10523

at the addresses designated by said parties for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper to each address, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

RAY HUGHES

Sworn to before me
this 17th day of March, 2008

Notary Public

MARCIA SAUNDERS
NOTARY PUBLIC, State of New York
No. 31-4717571
Qualified in New York County
Commission Expires May 31, 2010

3154119.1