UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEN SEVENTY ONE HOME CORP. and     :
MORTON G. YUTER,

Civil Action No.:
:  07 Civ. 11211 (DLC)

                    Plaintiffs,

                       :

       - against -

                       :

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, JOSH NEUSTEIN, LEONARD     :
HUTCHINGS, and JUDY HUTCHINGS,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIBERTY MUTUAL FIRE INSURANCE     :
COMPANY,

                       :

            Third-Party Plaintiff,

                       :

       - against -

                       :

GREENWICH INSURANCE COMPANY,

                       :

            Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN OPPOSITION TO
## THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

Jaffe & Asher LLP
600 Third Avenue, 9th Floor
New York, New York 10016
(212) 687-3000

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................................ii

**PRELIMINARY STATEMENT**........................................................................1

**STATEMENT OF ALLEGATIONS**...................................................................2

**ARGUMENT**..................................................................................................8

       LIBERTY MUTUAL STATES VALID CLAIMS FOR RELIEF
       AGAINST GREENWICH; THE INSTANT MOTION TO
       DISMISS MUST BE DENIED..................................................................8

**CONCLUSION**..............................................................................................20

# TABLE OF AUTHORITIES

242-44 East 77th Street, LLC v. Greater New York Mut. Ins. Co.,
31 A.D.3d 100, 815 N.Y.S.2d 507 (1st Dep't 2006)............................10

Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.,
60 N.Y.2d 390, 469 N.Y.S. 2d 655 (1983) ....................................9,10

Belt Painting Corp. v. TIG Ins. Co.,
100 N.Y.2d 377, 763 N.Y.S.2d 790 (2003) ..................................... 9

Continental Cas. Co. v. Rapid-American Corp.,
80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993) .....................................9,10

Davis v. Block & Smith, Inc.,
297 N.Y. 20 (1947) ......................................................................19

Erickson v. Pardus,
___ U.S. ___, 127 S. Ct. 2197 (2007) ............................................. 8

Essex Ins. Co. v. Pingley,
41 A.D.3d 774, 839 N.Y.S.2d 208 (2d Dep't 2007) .........................9-10

Finish Line, Inc. v. Dennis,
636 So. 2d 944 (La. Ct. App. 1994) ...........................................14,15

Handlesman v. Sea Ins. Co., Ltd.,
85 N.Y.2d 96, 623 N.Y.S.2d 750 (1994) .........................................11

In re EVCI Colleges Holding Corp.,
469 F. Supp. 2d 88 (S.D.N.Y. 2006) ............................................... 8

International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co.,
303 F.3d 419 (2d Cir. 2002)......................................................10,11

Koppel v. 4987 Corp.,
167 F.3d 125 (2d Cir. 1999).......................................................... 8

Nagler v. Admiral Corp.,
248 F.2d 319 (2d Cir. 1957).......................................................... 8

National Football League v. Vigilant Ins. Co.,
36 A.D.3d 207, 824 N.Y.S.2d 72 (1st Dep't 2006)................................................10

New York Convention Ctr. Operating Corp. v. Morris Cerullo World Evangelism, Inc.,
269 A.D.2d 275, 704 N.Y.S.2d 211 (1st Dep't 2000).........................................18

Public Serv. Mut. Ins. Co. v. Jacobs,
161 N.Y.S.2d 791 (N.Y. Sup. 1952) ...................................................12

Raymond Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,
5 N.Y.3d 157, 800 N.Y.S.2d 89 (2005) .............................................18

Royal Globe Ins. Co. v. Dinan,
42 Misc. 2d 595, 248 N.Y.S.2d 469 (1964) .....................................12,18

Sallie v. Tax Sale Investors, Inc.,
149 Md. App. 141, 814 A.2d 572 (2002) ..................................11,12,15,16,17,18

Sea Ins. Co., Ltd. v. Westchester Fire Ins. Co.,
51 F.3d 22 (2d Cir. 1995)..............................................................9,11

Southeast Farms, Inc. v. Auto-Owners Ins. Co.,
714 So. 2d 509 (Fla. Ct. App. 5th Dist. 1998)............................................12,13,14

Villager Pond, Inc. v. Town of Darien,
56 F.3d 375 (2d Cir. 1995)................................................................ 8

Westchester Resco Co., v. New England Reinsurance Corp.,
818 F.2d 2 (2d Cir. 1987)...............................................................10

ZKZ Assoc. LP v. CNA Ins. Co.,
224 A.D.2d 174, 637 N.Y.S.2d 117 (1st Dep't 1996)....................................18-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEN SEVENTY ONE HOME CORP. and       :
MORTON G. YUTER,                                         Civil Action No.:
                                                      :  07 Civ. 11211 (DLC)
                                    Plaintiffs,

                                                      :

            - against -

                                                      :

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, JOSH NEUSTEIN, LEONARD       :
HUTCHINGS, and JUDY HUTCHINGS,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIBERTY MUTUAL FIRE INSURANCE        :
COMPANY,

                                                      :

                        Third-Party Plaintiff,

                                                      :

            - against -

                                                      :

GREENWICH INSURANCE COMPANY,

                                                      :

                        Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN OPPOSITION TO
## THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendant/third-party plaintiff LIBERTY MUTUAL FIRE INSURANCE

COMPANY ("Liberty Mutual") submits this memorandum of law in opposition to third-

party defendant GREENWICH INSURANCE COMPANY's ("Greenwich") motion to

dismiss the Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

1

Greenwich's motion to dismiss should be denied because Liberty Mutual's Third-Party Complaint states a claim for relief. While Greenwich's policies contain endorsements that schedule certain premises, its coverage is not limited to accidents occurring at those premises. The endorsements specifically extend coverage to "operations necessary or incidental to those premises." In the Underlying Action, Leonard W. Hutchings and Judy Hutchings (the "Hutchings") allege claims for "bodily injury" arising out of "operations necessary or incidental to" the scheduled premises. At a minimum, their Verified Complaint raises a reasonable possibility that such a claim is alleged and/or Liberty Mutual should be allowed discovery to pursue more information about the nature of the operations conducted at the premises where the accident occurred.

## STATEMENT OF ALLEGATIONS

On or about October 18, 2007, plaintiffs commenced the above-entitled action seeking insurance coverage from Liberty Mutual for an Underlying Action entitled Leonard W. Hutchings and Judy Hutchings v. Morton G. Yuter, Josh Neustein, and Ten Seventy One Home Corp., Index No. 16037/05, that the Hutchings commenced in the Supreme Court of the State of New York, Bronx County, (the "Underlying Action"). By Order dated March 4, 2008, this Court dismissed the action as against all defendants except Liberty Mutual.

In the Underlying Action, the Hutchings seek damages for bodily injury allegedly suffered by Leonard W. Hutchings suffered on June 14, 2002 at the premises located at 3001 Arlington Avenue, Bronx, New York. According to the Verified

2

Complaint in the Underlying Action, plaintiff MORTON G. YUTER ("Yuter"), who is also a defendant in the Underlying Action, caused an overhead garage door located at the premises to close and strike Mr. Hutchings "about the head, neck and body, causing serious, severe and permanent injuries."

Liberty Mutual disclaimed coverage to Ten Seventy and Yuter for the Underlying Action because they are not insureds under Liberty Mutual's policy. Ten Seventy and Yuter thereafter brought the instant action. In their Verified Complaint, Ten Seventy and Yuter allege two claims for relief against Liberty Mutual. First, they allege that Liberty Mutual breached its insurance contract in disclaiming the duty to defend. Second, they allege a claim for reformation based upon mutual mistake. Ten Seventy and Yuter allege that the Liberty Mutual policy should be reformed to reflect that they are included under Liberty Mutual's policy as insureds.

After answering the Verified Complaint, Liberty Mutual commenced the third-party action against Greenwich. While denying that it owes coverage to Ten Seventy and Yuter, Liberty Mutual alleges, inter alia, that if it did owe coverage then Greenwich also owes coverage to Ten Seventy and Yuter for the claims alleged in the Underlying Action. Liberty Mutual seeks an allocation of coverage responsibility for the Underlying Action with Greenwich.

Liberty Mutual seeks a declaratory judgment against Greenwich under two insurance policies. Greenwich issued a Commercial General Liability policy, No. WGG 5001567, with a policy period from February 15, 2002 to February 15, 2003, to Ten

3

Seventy and Josh Neustein (the "567 Policy").[1]  As set forth on the declarations of the 567 Policy, it was issued to the 3001 Arlington Avenue, Bronx, New York address – the location where the alleged accident occurred.  The declarations include a schedule of locations.  The scheduled premises listed are 74-78 Post Avenue, New York, New York, which is a 69 unit rental apartment building, and 682 Academy Street, New York, New York, which is a 31 unit rental apartment building.

The 567 Policy includes an endorsement entitled, "Limitation of Coverage to Designated Premises or Project."  This endorsement contains an exclusion that provides, in relevant part, as follows:

> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
>
> 1.    The ownership, maintenance or use of the premises shown in the Schedule **and operations necessary or incidental to those premises**; or . . . .  (Emphasis supplied.)

The Schedule on the endorsement refers to the aforementioned premises listed in declarations as the scheduled premises.

Greenwich issued a second Commercial General Liability policy, No. WGG 5001564, with a policy period from February 15, 2002 to February 15, 2003, to 2485, LLC, as the first Named Insured (the "564 Policy").  The 564 Policy includes Ten Seventy and Josh Neustein as Named Insureds.  As set forth on the declarations of the

---

[1] The 567 Policy attached to Greenwich's motion papers is clearly incomplete.  The Commercial General Liability  Coverage Form, which is part of the policy, only includes the odd pages.  Thus, it contains page numbers 1, 3, 5, . . . .

4

564 Policy, it was also issued to Ten Seventy's 3001 Arlington Avenue, Bronx, New

York, address.  The declarations include a schedule of locations.  The scheduled premises

listed are (1) 2821 Briggs Avenue, Bronx, New York, which is a 32 unit rental apartment

building; (2) 502 West 213th Street, New York, New York, which is a 26 unit rental

apartment building; (3) 620 West 182nd Street, New York, New York, which is a 16

unit rental apartment building; and (4) 2486 Morris Avenue, Bronx, New York, which is

a 22 unit rental apartment building.

      The 564 Policy also includes the endorsement entitled, "Limitation of

Coverage to Designated Premises or Project."  This endorsement contains an exclusion that

provides, in relevant part, as follows:

> This insurance applies only to "bodily injury", "property
> damage", "personal and advertising injury" and medical
> expenses arising out of:
>
> 1.    The ownership, maintenance or use of the premises
> shown in the Schedule **and operations necessary or
> incidental to those premises**; or . . . .  (Emphasis supplied.)

The Schedule on this endorsement refers to the aforementioned premises listed in

declarations as the scheduled premises.

      Both of the policies issued by Greenwich provide coverage for accidents

occurring throughout the United States and in some international territories.  The insuring

agreements in the policies thus provide, in relevant part, as follows:

> b.    This insurance applies to "bodily injury" and "property
> damage" only if:

(1) The "bodily injury" or "property damage" is caused by
an "occurrence" that takes place in the "coverage territory"; .
. . .

Both policies, beginning on page 10 of the Commercial General Liability Coverage Form,[2]

contain the following definition of the "Coverage Territory":

4.    "Coverage territory" means:

a. The United States of America (including its territories
and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or
damage does not occur in the course of travel or
transportation to or from any place not included in a.
above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the
territory described in a. above; or

(b) The activities of a person whose home is in the
territory described in a. above, but is away for a short
time on your business; and

(2) The insured's responsibility to pay damages is
determined in a "suit" on the merits, in the territory
described in a. above or in a settlement we agree to.

This definition of "coverage territory" and the extension of coverage to accidents or

"occurrence" taking place in the "coverage territory" was not changed or redacted by any

endorsement.   It is inconsistent with Greenwich's view that coverage under its Commercial

---

[2] This page, as previously noted, is missing from the 567 Policy Greenwich submitted with its
motion.

6

General Liability policies is limited to accidents occurring on the scheduled premises –
particularly in light of the endorsement language extending coverage to "operations
necessary or incidental to those premises."

Upon information and belief, Ten Seventy, a corporation wholly-owned by
Josh Neustein, is in the business of owning and operating the above-mentioned six
scheduled apartment buildings. Ten Seventy's principal offices are located at the 3001
Arlington Avenue address. Each of the rental buildings listed on the Schedules of the two
Greenwich policies are operated, administered, and maintained from the 3001 Arlington
Avenue address. Yuter is employed by Ten Seventy in connection with the operation,
administration, and maintenance of the scheduled rental apartment buildings. Yuter was
engaged in this employment when he allegedly caused the overhead garage door to close
and strike Mr. Hutchings.

Liberty Mutual, if allowed to proceed in its action, intends to prove these
facts to support its claim for coverage under the two Greenwich policies. These facts will
establish that the alleged injuries arose out of the "operations necessary or incidental to"
the scheduled premises. The existence of the operational, administrative, and maintenance
offices at 3001 Arlington Avenue was necessary, and it clearly was incidental, to the
operation of the scheduled rental apartment building.

Greenwich should not be surprised that the operation of the scheduled rental
apartment buildings was being run by Ten Seventy from the 3001 Arlington Avenue
location. Greenwich, after all, issued the policies to that address – the operational offices

7

of the apartment buildings. Thus, when it agreed to extend coverage to "operations necessary or incidental to" the scheduled apartment buildings, it should have reasonably expected that its policies were covering risks at the 3001 Arlington Avenue location in connection with those operations.

## ARGUMENT

### LIBERTY MUTUAL STATES VALID CLAIMS FOR RELIEF AGAINST GREENWICH; THE INSTANT MOTION TO DISMISS MUST BE DENIED

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must presume that all allegations set forth in the complaint are true and construe them in a light most favorable the non-moving plaintiff. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999); In re EVCI Colleges Holding Corp., 469 F. Supp. 2d 88, 92 (S.D.N.Y. 2006). A motion to dismiss does not test whether the plaintiff will ultimately prevail; but rather whether the plaintiff is entitled to offer evidence to support its claims. See Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). Dismissal of a complaint is a drastic remedy that federal courts disfavor. See Nagler v. Admiral Corp., 248 F.2d 319, 322 (2d Cir. 1957). As Greenwich argues, its motion to dismiss must be denied "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her or his complaint which would entitle her or him to relief." (Memorandum of Law in Support of Third-Party Defendant Greenwich Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6)). In the case at bar, Greenwich's motion to dismiss must be denied because Liberty Mutual's Third Party

8

Complaint states a claim for relief for recovery under Greenwich's policies.  Greenwich

cannot begin to satisfy its admitted burden.

In discussing how courts are to construe insurance policies, the New York

Court of Appeals recently stated as follows:

> We read an insurance policy in light of "common speech" and
> the reasonable expectations of a businessperson (*Ace Wire &*
> *Cable Co. v. Aetna Cas. & Sur. Co.,* 60 N.Y.2d 390, 398,
> 469 N.Y.S.2d 655, 457 N.E.2d 761 [1983]; *Northville*
> *Indus. Corp.,* 89 N.Y.2d at 633, 657 N.Y.S.2d 564, 679
> N.E.2d 1044).  As we have repeatedly held, an insurer has a
> duty to defend if the allegations state a cause of action that
> gives rise to the reasonable possibility of recovery under the
> policy (*Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d
> 61, 65, 571 N.Y.S.2d 672, 575 N.E.2d 90 [1991] ).
> Moreover, to "negate coverage by virtue of an exclusion, an
> insurer must establish that the exclusion is stated in clear and
> unmistakable language, is subject to no other reasonable
> interpretation, and applies in the particular case" (*Continental*
> *Cas. Co. v. Rapid-American Corp.,* 80 N.Y.2d 640, 652,
> 593 N.Y.S.2d 966, 609 N.E.2d 506 [1993] ).  It follows
> that policy exclusions are given a strict and narrow
> construction, with any ambiguity resolved against the insurer
> (*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 N.Y.2d
> 356, 361, 357 N.Y.S.2d 705, 314 N.E.2d 37 [1974] ).

Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 792

(2003).

In applying these rules of policy construction, "[a]n insurer seeking to avoid

its obligation to defend an insured on the basis of a policy exclusion bears a heavy

burden."  Sea Ins. Co., Ltd. v. Westchester Fire Ins. Co., 51 F.3d 22, 26 (2d Cir.

1995).  "[A]n ambiguity in an exclusion must be construed most strongly against the

insurer."  Essex Ins. Co. v. Pingley, 41 A.D.3d 774, 776, 839 N.Y.S.2d 208, 209 (2d

Dep't 2007). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." National Football League v. Vigilant Ins. Co., 36 A.D.3d 207, 212, 824 N.Y.S.2d 72, 75 (1st Dep't 2006)(citing Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 972 (1993)); see also Westchester Resco Co., v. New England Reinsurance Corp., 818 F.2d 2, 3 (2d Cir. 1987); Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co., 60 N.Y.2d 390, 398, 469 N.Y.S. 2d 655, 659 (1983).

The test for ambiguity is whether the language of the insurance contract is susceptible of two reasonable interpretations. Essex Ins. Co. v. Pingley at 776, 839 N.Y.S.2d at 209-210. Where an insurance policy reasonably lends itself to two conflicting interpretations, its terms are ambiguous and must be construed in favor of the insured and against the insurer, the drafter of the policy language. 242-44 East 77th Street, LLC v. Greater New York Mut. Ins. Co., 31 A.D.3d 100, 105, 815 N.Y.S.2d 507, 511 (1st Dep't 2006).

Similarly, any ambiguity in the nature of the claim being alleged, such as where an underlying complaint is equivocal as to whether a covered claim is included within its allegations, gives rise to a duty to defend. See International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir. 2002). An equivocal pleading creates "a corresponding ambiguity as to whether coverage exists". Id. "Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured

10

and against the insurer". Id. at 424-25 (*citing* Handlesman v. Sea Ins. Co., Ltd., 85

N.Y.2d 96, 101, 623 N.Y.S.2d 750, 752 (1994)).

This rule of coverage, that when ambiguities exist any doubt must be

resolved in favor of coverage, applies to disputes between two insurers. Sea Ins. Co., Ltd.,

51 F.3d at 26 n.4.

In the case at bar, Greenwich moves to dismiss the Third-Party Complaint

solely based upon the argument that coverage for the Underlying Action is barred by

reason of exclusions included in its policies. The exclusionary language at issue provides as

follows:

> This insurance applies only to "bodily injury", "property
> damage", "personal and advertising injury" and medical
> expenses arising out of:
>
> 1.     The ownership, maintenance or use of the premises
> shown in the Schedule and operations necessary or incidental
> to those premises; or . . . .

The exclusion, by its terms, specifically does not apply to "operations necessary or

incidental to those premises." Other courts, in construing this language, have determined

that it is, at the least, ambiguous as to whether it applies to accidents that occurs on other

premises away from the scheduled premises. See Sallie v. Tax Sale Investors, Inc., 149

Md. App. 141, 162, 814 A.2d 572, 584 (2002).

The term "incidental" in the context of this type of language is construed to

mean "casual or accidental", or "occasionally", or "matters collateral and accessory,

directly pertaining to, or in some relation to." See Royal Globe Ins. Co. v. Dinan, 42 Misc. 2d 595, 597, 248 N.Y.S.2d 469, 471 (1964).

Greenwich argues that, by reason of this language, the policies "only apply to the listed premises." Attempting to overcome the ramification of the phrase "operations necessary or incidental to those premises", Greenwich attempts to misconstrue this phrase to apply only to those operations "that truly are necessary or incidental" and argue that this language limits coverage only to accidents at locations adjacent to the scheduled premises. This argument has been specifically rejected by the only New York court that has considered the issue. See Public Serv. Mut. Ins. Co. v. Jacobs, 161 N.Y.S.2d 791 (N.Y. Sup. 1952).

Greenwich's arguments are misplaced. The policy language does not limit coverage to "operations truly necessary or incidental". It, rather, broadly carves out all "operations necessary or incidental" to the scheduled premises from the scope of the exclusion. The policy language, moreover, contains no language applying a geographic restriction limiting coverage based upon the distance the operation exists from the scheduled premises. This provision, instead, "may be interpreted as providing coverage for injuries occurring away from the designated premises when there is a sufficient nexus between the injury and the insured's business operations." Sallie at 159, 814 A.2d at 582; see also Southeast Farms, Inc. v. Auto-Owners Ins. Co., 714 So. 2d 509, 512 (Fla. Ct. App. 5th Dist. 1998)("the term 'operations necessary or incidental to those premises' appears broad enough to include *business* operations necessary or incidental to the listed

12

premises"). The determinative factor is the relationship of the operations to the scheduled premises – whether they are "necessary or incidental" to the scheduled premises.

Case law from other States that has addressed the specific language in Greenwich's policies supports the position that coverage extends beyond areas located adjacent to the scheduled locations. In Southeast Farms, 714 So. 2d 509, Southeast Farms, Inc. ("Southeast Farms") was a produce broker principally brokering potatoes. It brokered the sale of Alabama-grown potatoes that were in a truck that collided with a Honda Accord in Virginia, killing the driver of the Honda, Kathleen Tarbake, and her niece, Kelly Little. The Tarbake and Little estates brought suit against Southeast Farms, alleging that it negligently failed to inspect the condition of the truck on which it loaded its potatoes, negligently failed to determine the qualifications of the driver, and negligently failed to comply with the Federal Motor Carrier Safety Act. Southeast tendered the claim to its insurer, Auto-Owners Insurance Company ("Auto-Owners"), which disclaimed coverage based upon the exact same "Limitation of Coverage to Designated Premises or Project" endorsement as contained in the Greenwich policies in the case at bar. Id. at 510. "The only premises listed on the supplemental declarations page are Southeast Farms' Hastings and Florida City offices." Id.

Auto-Owners argued that the exclusion applies because "the immediate circumstance which caused the injury, along with the negligence leading to the injury, did not occur on the designated premises or arise out of the operation of Southeast Farms'

13

main business purpose". Id. at 511. The District Court of Appeal of Florida rejected that

argument, reasoning as follows:

> It is correct that the alleged situs of Southeast Farms' negligent
> acts, Henager, Alabama, is not a covered premises. If the
> policy restricted coverage to the listed premises, the case
> would end here. However, the policy also covers "operations
> necessary or incidental to [the listed] premises."

> \* \* \*

> Certainly the act of obtaining transportation for brokered
> potatoes is an incident of the brokering of potatoes. While
> Auto-Owners' argument misses the point, it does highlight the
> root of the problem with this case, and that is the lack of
> clarity as to whether the policy is a general liability policy or a
> premises liability policy.

> \* \* \*

> With that existing ambiguity, the term "operations necessary
> or incidental to those premises" appears broad enough to
> include *business* operations necessary or incidental to the listed
> premises.

Id. at 511-12. This ambiguity, the Florida Court concluded, "must be resolved in favor

of coverage." Id. at 512.

In Finish Line, Inc. v. Dennis, 636 So. 2d 944 (La. Ct. App. 1994), Felix

Givens had been drinking at The Finish Line. After he passed out inside the bar,

employees of The Finish Line placed Givens in the back seat of his vehicle. After he woke

up and while he was driving home, Givens caused an automobile accident which resulted in

injuries to others. The injured sued Jefferson Downs d/b/a The Finish Line. Mr. Downs

14

sought coverage under his Commercial General Liability policy from his insurer, General
Star Indemnity Company ("General"), which denied coverage.

General argued that its policy does not provide coverage because of the
exact same exclusion as that which Greenwich relies upon in the case at bar. General
argued that "this endorsement limits coverage only to losses insured through activities on
the business premises and that the accident which caused plaintiffs' injuries did not occur
on the premises." Id. at 947. In holding that General owed Downs a duty to defend, the
Court of Appeals of Louisiana reasoned that the events of the claim "were incidental to
the premises" and that "[t]he policy provisions argued by General do not unambiguously
exclude coverage." Id. at 947-48.

In Sallie, 149 Md. App. 141, 814 A.2d 572, a suit was brought against
Tax Sale Investors, Inc. ("TSI") for wrongful eviction. TSI was insured by The Hartford
Insurance Company ("Hartford") pursuant to a "Spectrum Policy" insuring "Business
Liability", which expressly included claims for wrongful eviction. Hartford's policy,
however, contained an endorsement entitled "Limitation of Liability Coverage to
Designated Premises", which contained substantially the same exclusion as the Greenwich
policies. Id. at 152, 814 A.2d at 578. The Hartford policy designated an office location
for TSI as the scheduled premises, but the eviction occurred on other property owned by
TSI. Id. at 144, 814 A.2d at 573.

The Court of Special Appeals of Maryland reasoned that this exclusion
language "may suggest two meanings to a reasonably prudent layperson." Id. at 153,

15

814 A.2d at 579.  The Court reasoned that this provision may be construed to extend

coverage to business operations arising out of the operations of TSI's business at the

scheduled location.  Id. at 156, 814 A.2d at 581.  As the Court stated,

> [The] language appearing to limit coverage to injuries "arising
> out of the ownership, maintenance or use of the designated
> premises and operations necessary or incidental thereto (or
> operations necessary or incidental to the premises)" **may be
> interpreted as providing coverage for injuries occurring
> away from the designated premises when there is a
> sufficient nexus between the injury and the insured's
> business operations**.  (Emphasis supplied.)

Id. at 159, 814 A.2d at 582.  The Maryland Court noted that Hartford's policy

contained a provision defining the "coverage territory" as including "the United States of

America. . ., Puerto Rico and Canada", which was inconsistent with Hartford's narrow

interpretation of the policy.  Id.  The Maryland Court thus concluded and held "the policy

is ambiguous with respect to whether it provides coverage for the wrongful eviction that

occurred on premises other than the premises designated in the policy."  Id. at 162, 814

A.2d at 584.  The matter was remanded back to the Trial Court for receipt of extrinsic

evidence to resolve the ambiguity and for a factual determination of whether the wrongful

eviction arose out of the scheduled premises or operations necessary or incidental to the

premises.  As the Court directed, "[i]f the ambiguity cannot be resolved through extrinsic

evidence, it should be resolved against the insurer."  Id.

        In applying the decisional law to the case at bar, it is clear that Greenwich

cannot satisfy its heavy burden of showing that its exclusion, in clear and unmistakable

language bars coverage for the Underlying Action and is subject to no other reasonable

16

interpretation. The Greenwich policies, by their terms, do not restrict coverage to the scheduled premises. The policies also cover "operations necessary or incidental to those premises." This language may be construe to extend coverage for injuries occurring away from the designated premises when there is a sufficient nexus between the injury and Ten Seventy's business.

   The properties listed on the Greenwich policies are rental apartment building owned and/or operated by Ten Seventy. These apartment buildings were operated and maintained from Ten Seventy's administrative offices at the 3001 Arlington Avenue address. The accident occurred at these administrative offices, and Yuter was acting as an employee of Ten Seventy at that time. The maintenance of the administrative office is clearly incidental to the scheduled rental apartment buildings. There clearly is a sufficient nexus between the alleged injury to Hutchings and Ten Seventy's business operations. At the least, there exists an issue of fact, and there exists a factual question of whether the accident arose out of Ten Seventy's ownership and operation of the apartment buildings or "operations necessary or incidental" to them. See id. at 162-63, 814 A.2d at 584.

   Other provisions of the Greenwich's policies support Liberty Mutual's arguments. Greenwich should have reasonably expected that the maintenance of the administrative offices for the apartments was conducted at the 3001 Arlington Avenue address. Both of the Greenwich policies state on their face that they were mailed and thus were issued to Ten Seventy at its corporate administrative offices at 3001 Arlington Avenue, Bronx, New York. By agreeing to insure the "operations necessary or incidental"

17

the listed apartment buildings, Greenwich should have understood and expected that it was insuring the corporate offices from where those apartments were operated, administered and maintained.

In addition, Greenwich's arguments ignore the definition of "coverage territory" in the Greenwich policies. This language clearly contemplates coverage for "bodily injury" that occurs anywhere in the United States. The Greenwich policies must be construed in a way that affords a fair meaning to all of their provisions and leaves no provision without force and effect. See Raymond Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 5 N.Y.3d 157, 162, 800 N.Y.S.2d 89, 91 (2005). The only consistent construction of the Greenwich policies, which would give meaning to both the "coverage territory" provisions and the exclusion upon which Greenwich relies, is to construe the language "operations necessary or incidental" in the exclusion in terms of operational relationship with the scheduled premises and not in terms of the location of the alleged accident. See Sallie at 159, 814 A.2d at 582.

The cases Greenwich cites either address different exclusion language or are completely inapposite to the case at bar. In New York Convention Ctr. Operating Corp. v. Morris Cerullo World Evangelism, Inc., 269 A.D.2d 275, 704 N.Y.S.2d 211 (1st Dep't 2000), and in Royal Globe Ins. Co. v. Dinan, 42 Misc. 2d 595, 248 N.Y.S.2d 469, both courts found in favor of coverage and, while the accidents occurred in a location near the listed premises, the location of the accident was not cited by either Court as a basis for its decision. In ZKZ Assoc. LP v. CNA Ins. Co., 224 A.D.2d 174, 637

18

N.Y.S.2d 117 (1st Dep't 1996), the First Department held that the claim was covered and the policy at issue did not even contain the key "operations necessary or incidental" coverage language.

In Davis v. Block & Smith, Inc., 297 N.Y. 20 (1947), the Workers Compensation policy at issued scheduled specific project locations. The underlying claimant/employee was injured while working at a project location not on the schedule. Unlike in the case at bar, it was not claimed that the claimant/employee was engaged in work at the time of his accident that was connected or related to the work performed at the scheduled premises. Id. at 25. The New York Court of Appeals, however, clearly indicated if the employee was engaged in some sort of operation away from the scheduled premises that was connected with or related to the work at the scheduled premises, there would have been coverage. Id.

The facts in Davis are not akin to the facts in the case at bar. Davis would apply if, for instance, an accident occurred at another rental apartment building owned by Ten Seventy but which building was not scheduled. The operation of one apartment building may not be "necessary or incidental" to the operation of another apartment building. On the other hand, the maintenance of corporate headquarters from where the buildings are operated, administered, and maintained would be "necessary or incidental" to the operation of both buildings.

Accordingly, Greenwich's motion to dismiss the Third-Party Complaint should be denied. Liberty Mutual has stated valid claims for relief against Greenwich. The

19

operation of the corporate offices at 3001 Arlington Avenue, where the accident occurred, was clearly "necessary or incidental" to the scheduled apartment building.  At the very least, an issue of fact exists as to whether claim arises from "operations necessary or incidental to" the scheduled buildings.

## CONCLUSION

For the foregoing reasons, Liberty Mutual respectfully requests that this Court deny Greenwich's motion to dismiss in all respects.

Dated:    New York, New York
          April 18, 2008

                                        Respectfully submitted,

                                        JAFFE & ASHER LLP

                                        By: _____
                                            Marshall T. Potashner, Esq. (MTP-3552)
                                            Barak P. Cardenas, Esq. (BC -1276)
                                        Attorneys for Defendant/Third-Party Plaintiff
                                        LIBERTY MUTUAL FIRE
                                        INSURANCE COMPANY
                                        600 Third Avenue, 9th Floor
                                        New York, New York  10016
                                        (212) 687-3000